NO. 25-1056

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
APPELLEE

V.

PATRICK BAXTER,
DEFENDANT-APPELLANT

ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# REDACTED BRIEF FOR THE UNITED STATES

LEAH B. FOLEY
UNITED STATES ATTORNEY

ALEXIA R. DE VINCENTIS
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3211

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................................................................... iv

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF ISSUES ..................................................................... 1

STATEMENT OF THE CASE ................................................................ 1

A. Motion to Suppress ........................................................................ 2

1. Search Warrant ............................................................................ 2

2. Denial of Motion to Suppress ...................................................... 6

B. Trial ................................................................................................. 6

1. The government's evidence ......................................................... 6

2. The defense case ........................................................................ 12

C. Sentencing ..................................................................................... 14

SUMMARY OF ARGUMENT ............................................................. 15

ARGUMENT ....................................................................................... 16

I. THE SEARCH WARRANT WAS AMPLY SUPPORTED BY PROBABLE CAUSE ........................................................................ 16

A. Standard of Review ...................................................................... 17

B. There Is No Basis For Suppression ............................................... 17

II. THE JURY RATIONALLY CONCLUDED THAT BAXTER PRODUCED CHILD PORNOGRAPHY ........................................... 19

A. Standard of Review ...................................................................... 19

B. Baxter's Newly Raised Statutory Arguments Are Foreclosed By The Law of the Circuit....20

C. Under This Court's Controlling Law, A Rational Jury Could Find the Count 3 Images Depict "Lascivious Exhibitions" of A.F.'S Genitals, Anus, or Pubic Area....22

1. The jury rationally could have found that each of the images was pornographic....22

a. Bedroom photographs....23

b. Bedroom videos....24

c. Bathroom photographs....25

2. *Yates* does not apply....26

D. § 2251(a) Is Not Unconstitutional As Applied to Baxter....30

III. THERE WAS NO REVERSIBLE EVIDENTIARY ERROR....32

A. Standard of Review....32

B. The Admission of Testimony Regarding Freenet, Even To The Extent Erroneous, Did Not Affect Baxter's Substantial Rights....32

C. The Admission of Alleged "Hearsay Testimony" To Satisfy the Jurisdictional Elements, Even To The Extent Erroneous, Did Not Affect Baxter's Substantial Rights....36

D. None of the Other Allegedly Inadmissible Evidence Warrants a New Trial....39

IV. BAXTER IS NOT ENTITLED TO RESENTENCING....42

A. Standard of Review....42

B. Baxter Engaged in a Pattern of Sexual Exploitation of a Minor....42

C. The District Court Did Not Plainly Err in Applying the Vulnerable Victim Adjustment ....................................................................44

D. Any Error In The District Court's Explanation For The Obstruction-Of-Justice Enhancement Was Harmless .............................49

CONCLUSION ..........................................................................................51

CERTIFICATE OF COMPLIANCE ..........................................................52

CERTIFICATE OF SERVICE ....................................................................53

# TABLE OF AUTHORITIES

## CASES

*Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*,
205 F.3d 137 (4th Cir. 2000) .......... 40

*Firehouse Rest. Grp., Inc. v. Scurmont LLC*,
No. 4:09-CV-00618-RBH, 2011 WL 3555704 (D.S.C. Aug. 11, 2011) .......... 40

*Griffin v. United States*,
502 U.S. 46 (1991) .......... 27, 29

*Kaley v. United States*,
571 U.S. 320 (2014) .......... 17

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 29

*Ortiz-Graulau v. United States*,
756 F.3d 12 (1st Cir. 2014) .......... 21

*Skilling v. United States*,
561 U.S. 358 (2010) .......... 28

*United States v. Ahrendt*,
560 F.3d 69 (1st Cir. 2009) .......... 45

*United States v. Amirault*,
173 F.3d 28 (1st Cir. 1999) .......... 23-24, 26

*United States v. Benitez-Avila*,
570 F.3d 364 (1st Cir. 2009) .......... 33

*United States v. Boggi*,
74 F.3d 470 (3d Cir. 1996) .......... 50

*United States v. Charriez-Rolón*,
923 F.3d 45 (1st Cir. 2019) .......... 19-20

*United States v. Chin*,
965 F.3d 41 (1st Cir. 2020) .......... 46

*United States v. Condron*,
98 F.4th 1 (1st Cir. 2024)....................................................................................37

*United States v. Deason*,
965 F.3d 1252 (11th Cir. 2020) .............................................................. 39-40

*United States v. Dennis*,
132 F.4th 214 (2d Cir. 2025) ................................................................. 30-31

*United States v. Dickerman*,
954 F.3d 1060 (8th Cir. 2020) ............................................................... 18-19

*United States v. Dominguez Benitez*,
542 U.S. 74 (2004).............................................................................................49

*United States v. Dost*,
636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom.*,
*United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.1987)..............................23

*United States v. Dowell*,
771 F.3d 162 (4th Cir. 2014) ...................................................................43, 47

*United States v. Duarte*,
246 F.3d 56 (1st Cir. 2001)................................................................................32

*United States v. Dubon-Otero*,
292 F.3d 1 (1st Cir. 2002)..................................................................................28

*United States v. Dunnigan*,
507 U.S. 94 (1993)......................................................................................49, 51

*United States v. Ellyson*,
326 F.3d 522 (4th Cir. 2003) ............................................................................28

*United States v. Etienne*,
772 F.3d 907 (1st Cir. 2014)......................................................................36, 38

*United States v. Frabizio*,
459 F.3d 80 (1st Cir. 2006).......................................................................*passim*

*United States v. Gaffney-Kessell*,
772 F.3d 97 (1st Cir. 2014)........................................................................ 43-44

*United States v. Gallagher*,
90 F.4th 182 (4th Cir. 2024) ....................................................................28

*United States v. Gawthrop*,
310 F.3d 405 (6th Cir.2002) ................................................................ 47-48

*United States v. Gray*,
942 F.3d 627 (3d Cir. 2019) .....................................................................50

*United States v. Gray*,
No. 7:22-CR-00001, 2022 WL 11588923 (W.D. Va. Oct. 20, 2022) .......................18

*United States v. Grullon*,
996 F.3d 21 (1st Cir. 2021).......................................................................30

*United States v. Hanafy*,
124 F. Supp. 2d 1016 (N.D. Tex. 2000) ......................................................29

*United States v. Henry*,
848 F.3d 1 (1st Cir. 2017).........................................................................45

*United States v. Hill*,
700 F. App'x 235 (4th Cir. 2017) ...............................................................31

*United States v. Hillie*,
39 F.4th 674 (D.C. Cir. 2022).............................................................. 20-21

*United States v. Holmes*,
814 F.3d 1246 (11th Cir. 2016) ..................................................................21

*United States v. Horn*,
187 F.3d 781 (8th Cir. 1999) .....................................................................21

*United States v. Katzin*,
707 F. App'x 116 (3d Cir. 2017) ................................................................49

*United States v. Langston*,
110 F.4th 408 (1st Cir.), *cert. denied*, 145 S. Ct. 581 (2024)............................ 30-31

*United States v. Leon*,
468 U.S. 897 (1984)...................................................................................19

*United States v. Lewis*,
517 F.3d 20 (1st Cir. 2008).........................................................................20

*United States v. Mayendía-Blanco*,
905 F.3d 26 (1st Cir. 2018)....21

*United States v. McCoy*,
108 F.4th 639 (8th Cir.) (en banc), *cert. denied*, 145 S. Ct. 551 (2024)....20

*United States v. McCullock*,
991 F.3d 313 (1st Cir. 2021)....50

*United States v. Mehanna*,
735 F.3d 32 (1st Cir. 2013)....29

*United States v. Messner*,
37 F.4th 736 (1st Cir. 2022)....48

*United States v. Miller*,
829 F.3d 519 (7th Cir. 2016)....24

*United States v. Morales-de-Jesus*,
372 F.3d 6 (1st Cir. 2004)....30-31

*United States v. Nagell*,
911 F.3d 23 (1st Cir. 2018)....42, 50

*United States v. Neal*,
36 F.3d 1190 (1st Cir. 1994)....35

*United States v. Nieto*,
60 F.3d 1464 (10th Cir. 1995)....38

*United States v. Nieves-Burgos*,
62 F.3d 431 (1st Cir. 1995)....27-28

*United States v. O'Brien*,
435 F.3d 36 (1st Cir. 2006)....49

*United States v. O'Donovan*,
126 F.4th 17 (1st Cir. 2025)....35

*United States v. Orlandella*,
96 F.4th 71 (1st Cir. 2024)....24

*United States v. Pabon*,
819 F.3d 26 (1st Cir. 2016)....30

*United States v. Pinkham*,
896 F.3d 133 (1st Cir. 2018) .......... 42, 44

*United States v. Poulin*,
631 F.3d 17 (1st Cir. 2011) .......... 31

*United States v. Pullman*,
No. 23-1508, 2025 WL 1553674 (1st Cir. June 2, 2025) .......... 27

*United States v. Ramos*,
739 F.3d 250 (5th Cir. 2014) .......... 47

*United States v. Rathbun*,
98 F.4th 40 (1st Cir. 2024) .......... 30

*United States v. Romero*,
906 F.3d 196 (1st Cir. 2018) .......... 47

*United States v. Seekins*,
No. 21-10556, 2022 WL 3644185 (5th Cir. Aug. 24, 2022) .......... 31

*United States v. Sheehan*,
70 F.4th 36 (1st Cir. 2023) .......... 17-19

*United States v. Shehadeh*,
127 F.4th 1058 (7th Cir. 2025) .......... 51

*United States v. Silva*,
794 F.3d 173 (1st Cir. 2015) .......... 21, 25-26, 28

*United States v. Spoor*,
904 F.3d 141 (2d Cir. 2018) .......... 26

*United States v. Stoner*,
466 F. App'x 720 (10th Cir. 2012) .......... 51

*United States v. Taylor*,
845 F.3d 458 (1st Cir. 2017) .......... 44

*United States v. Theis*,
853 F.3d 1178 (10th Cir. 2017) .......... 21

*United States v. Vallier*,
711 F. App'x 786 (6th Cir. 2018) .......... 26

*United States v. Vavic*,
2025 WL 1540782 (1st Cir. May 30, 2025) ....................28

*United States v. Velázquez-Aponte*,
940 F.3d 785 (1st Cir. 2019) ....................32

*United States v. Vázquez-Rivera*,
665 F.3d 351 (1st Cir. 2011) .................... 33-34

*United States v. Weston*,
960 F.2d 212 (1st Cir. 1992) ....................50

*United States v. Wiegand*
812 F.2d 1239 (9th Cir. 1987) ....................23

*United States v. Woods*,
321 F.3d 361 (3d Cir. 2003) ....................38

*United States v. Wright*,
774 F.3d 1085 (6th Cir. 2014) ....................21

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990) ....................39, 41

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
No. 07 CIV. 5804 (GEL), 2009 WL 959775 n.6 (S.D.N.Y. Apr. 8, 2009) ....................41

*Yates v. United States*,
354 U.S. 298 (1957) .................... 27-28

**STATUTES AND RULES**

18 U.S.C. § 2251(a) ....................*passim*

18 U.S.C. § 2251(e) ....................6

18 U.S.C. § 2252A ....................2

18 U.S.C. § 2252A(a)(2)(A) ....................6, 37

18 U.S.C. § 2252A(a)(5)(B) ....................6, 37

18 U.S.C. § 2252A(b)(2) ....................6

18 U.S.C. § 2256(2)(A) ..... 19, 25

18 U.S.C. § 3231 ..... 1

18 U.S.C. § 3742(a) ..... 1

28 U.S.C. § 1291 ..... 1

Fed. R. Evid. 801(c) ..... 40

Fed. R. Evid. 803(6) ..... 38

Fed. R. Evid. 803(17) ..... 38

Fed. R. Evid. 807 ..... 38

Fed. R. Evid. 1001 ..... 39

Fed. R. Evid. 1002 ..... 39

**<u>SENTENCING GUIDELINES</u>**

USSG § 2G2.1(b)(1) ..... 47

USSG § 2G2.1(b)(1)(5) ..... 48

USSG § 2G2.2(b)(2) ..... 14, 45-47

USSG § 2G2.2(b)(4) ..... 14

USSG § 2G2.2(b)(5) ..... 14, 43

USSG § 2G2.2(b)(5) comment. n.1 ..... 43

USSG § 2G2.2(b)(6) ..... 14

USSG § 2G2.2(b)(7)(D) ..... 14

USSG § 3A1.1 ..... 46

USSG § 3A1.1(b)(1) ..... 14, 44

USSG § 3A1.1 comment. n.2 ..... 46

USSG § 3B1.3 ..... 48

USSG § 3C1.1 .................................................................................................. 14, 49

USSG § 4B1.5(b)(1) ............................................................................................... 43

USSG § 5G1.2(b) ................................................................................................... 14

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction because the indictment charged the defendant, Patrick Baxter, with offenses against the United States. 18 U.S.C. § 3231. Judgment was entered on January 8, 2025 [Add.1],[1] and Baxter timely appealed [JA.598]. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF ISSUES

1. The search warrant was amply supported by probable cause.
2. The jury rationally concluded that Baxter produced child pornography.
3. There was no reversible evidentiary error.
4. Baxter is not entitled to resentencing.

## STATEMENT OF THE CASE

Baxter was charged on January 5, 2023 with possession and receipt of child pornography after a search of his hard drive revealed hundreds of files containing child pornography, including files involving prepubescent minors who had not

---

[1] Citations are as follows: "[D.__]" refers to a docket entry; "[Br.__]" to Baxter's opening brief; "[Add.__]" to his addendum; "[JA.__]" to the joint appendix; "[SA.__]" to the joint sealed appendix; and "[GSA.__]" to the government's supplemental sealed appendix. The final presentence investigation report ("PSR"), which is contained in Volume II of the sealed joint appendix, is cited as "[PSR ¶__]." The alleged child sexual abuse materials relevant to this appeal are cited by exhibit number and found on a thumb drive inserted in a sleeve at the back of the government's sealed supplemental appendix.

attained 12 years of age. [D.15]. When further review of the hard drive revealed sexually explicit photographs and videos of Baxter's seven-year-old [redacted] taken at his home [D.92], he was charged in an August 1, 2024 superseding indictment with producing child pornography. [JA.45-49]. At a three-day trial following the denial of his motion to suppress, a jury convicted him of all counts. [JA.515-16]. Baxter now appeals the denial of his motion to suppress, his conviction, and his sentence.

**A. Motion to Suppress**

**1. Search Warrant**

As part of an investigation into users of an internet-based peer-to-peer file sharing network called "Freenet" who were downloading or attempting to download child pornography, the Federal Bureau of Investigation ("FBI") identified an internet protocol ("IP") address and traced it to Baxter's residence in Melrose, Massachusetts. [SA.2, 10, 13]. Using this information, the FBI obtained a warrant to search the residence for evidence of violations of 18 U.S.C. §2252A, which criminalizes, inter alia, the receipt, distribution, or possession of child pornography. [SA.1, 27].

The warrant was supported by the affidavit of Special Agent Bryce Montoya of the FBI Boston Child Exploitation – Human Trafficking Task Force and described the operation of Freenet and its use in identifying Baxter. [SA.1-27]. Montoya's affidavit explained that "[e]ach computer running Freenet connects directly to other

computers running Freenet, which are called its 'peers'" and vary in number depending on the quality and speed of the user's internet connection." [SA.3]. Users installing Freenet "agree[] to provide to the network a portion of the storage space on the user's computer hard drive, so that files uploaded by Freenet users can be distributed and stored across the network." [SA.3].

"When a user uploads a file into Freenet, the software breaks the file into pieces (called 'blocks') and encrypts each piece. The encrypted pieces of the file are then distributed randomly and stored throughout the Freenet network of peers." [SA.3]. The software also creates an index that lists all of the blocks of the file and a unique "key"—"a series of letters, numbers and special characters"—that can be used to find the blocks and reconstruct the file. [SA.3]. A user must have the key to download a file on Freenet. [SA.3].

When a user attempts to download a file, Freenet requests the pieces of the file from the user's peers. [SA.4]. "Rather than request all of the file pieces from a single peer, requests for file pieces are divided up in roughly equal amounts among the user's peers. If a user's peer does not have the particular requested pieces in its storage, that peer will then divide up and asks its peers for the pieces, and so on." [SA.4]. This means, for example, that

> if User "A" has 10 peers and requests 1000 pieces of a file, roughly 100 pieces are requested from each one of User A's peers. If Peer "B" receives User A's request for 100 pieces of the file, but does not have any of those pieces in

> its storage, Peer B forwards on the request for those pieces to Peer B's peers. If Peer B has 10 peers of its own, roughly 10 pieces are requested from each one of Peer B's peers.

[SA.4].

Law enforcement computers operating a modified version of Freenet receive requests for file pieces sent to it, both from original requesters and peers of original requesters relaying requests. [SA.7-9]. The requests reveal, among other information, the IP addresses of the user's peers, the number of peers those peers report to have, and the remaining number of times a request for a piece of a file may be forwarded. [SA.8]. Law enforcement culls requests to those that are for pieces of suspected child pornography from either the original requester or a peer of the original requester. [SA.5-6, 8-9]. "A mathematical formula is then applied to determine the probability of whether the number of requests received for pieces of a file is significantly more than one would expect if the peer were merely forwarding a request of another user." [SA.9].

Montoya stated that he reviewed "a peer-reviewed, publicly-available academic paper describing the methodology of that mathematical formula," which he offered to make available to the court upon request. [SA.9]. He then proceeded to explain the formula's premise: "Because a peer that is merely routing another peer's request would ask its peers for a significantly smaller portion of the pieces of a file than an original requestor, it is possible for the recipient of requests to

determine whether a request is significantly more likely than not from an original requestor." [SA.9]. He relayed that "[t]he academic paper's detailed evaluation finds that a formal mathematical formula based on this reasoning is highly accurate," in that it "has a high true positive rate and a low false positive rate." [SA.9]. Based upon his "training and experience and consultation with others in the field," Montoya agreed that this was "a reliable method to determine whether it is significantly more probable than not that a given Freenet computer is the original requester of a file of interest" and reported that it had been successfully used to identify possessors of child pornography in other cases. [SA.9-10].

Montoya next described requests from Baxter's IP address for pieces of multiple child pornography files from a law enforcement Freenet computer. Specifically, he relayed that Baxter's IP address, with an average of 34.3 peers, requested from a law enforcement computer 72 out of 2,764 total pieces needed to assemble one child pornography file; with an average of 34.6 peers, requested 71 out of 2,078 pieces of a second child pornography file; and with an average of 27.6 peers, requested 44 out of 1,380 pieces of a third child pornography file. [SA.10-13]. Montoya concluded, "[w]ith respect to each file—considering the number of requested file pieces, the total number of file pieces required to assemble the file, and the number of peers the user had—the number of requests for file pieces is

significantly more than one would expect to see if the user … were merely routing the request of another user." [SA.10].

#### 2. Denial of Motion to Suppress

Baxter filed a pre-trial motion to suppress the fruits of the search, arguing that the warrant did not provide probable cause to believe the internet user at his IP address "had knowingly requested materials containing child pornography" [JA.29 (capitalization omitted)] because, *inter alia*, it did not include the formal mathematical formula used to determine that the user was likely an original requester of child pornography [JA.30-31]. The district court disagreed and denied his motion. [JA.42-43].

### B. Trial

Baxter proceeded to trial in October 2024 on three charges: (1) possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count One); receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Count Two); and sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Three). [JA.45-47]. The jury convicted him on all counts [JA.515-16] following a three-day trial at which it heard the following evidence.

#### 1. The government's evidence

FBI Special Agent Montoya testified that, acting on a lead from the FBI's Child Exploitation Operational Unit that an IP address traced to a residence in

Melrose, Massachusetts was attempting to download child pornography from a peer-to-peer file sharing network called "Freenet," he obtained a warrant to search the residence for evidence of the receipt or possession of child pornography. [JA.207-10, 247]. Baxter lived at the residence with his wife and their two young children, who were then ages five and three. [JA.212].

Investigators executed the search warrant on November 2, 2021 and seized eight electronic devices. [JA.210, 214]. Among the devices seized were an Apple MacBook laptop computer found on a living room ottoman and a Samsung solid state drive ("SSD") found on an end table in the same room. [JA.210, 214-15, 251]. Agents conducted an on-site preview of the MacBook and found no child pornography on that device. [JA.218]. The SSD was encrypted, however, requiring the assistance of a specialized FBI unit to determine the password. [JA.219-21]. The password set by the external hard drive's user was discovered to be "SR20DETT." [JA.287, 326-27].

Once accessed, the SSD was found to contain two profiles: one titled "Baxter," and another titled "Backup." [JA.221-22, 295-98]. The Apple ID associated with the Backup profile was pwbaxter@gmail.com—an email Google records identified "Patrick Baxter" as the subscriber for, and the same Apple ID associated with Baxter's cell phone. [JA.222-23, 299]. Internet search history for the Backup profile included searches for an elementary school attended by one of

Baxter's children [JA.223] and showed that the user accessed an Outlook email address with a display name of "Baxter, Patrick." [JA.223-24, 299-300]. A "simple google search" suggested that the password for the SSD related to a turbo-charged Nissan engine manufactured in the '90s [JA.287, 327],[2] and trial testimony, including Baxter's own, showed that Baxter was a car enthusiast [JA.342, 375, 424, 438].

Montoya testified that the Backup account also contained internet search history related to Freenet and listed Freenet as a favorited bookmark within the internet browser, included a text file with Freenet installation instructions, and contained hundreds of messages from Freenet's messaging board system, where users can share "unique string[s] of numbers," or "keys," needed to request child pornography files [JA.208-09]. [JA.223-25]. The Backup account also featured a folder titled "Freenet" and, within that, a subfolder titled "downloads" that contained over 90 child pornography files [JA.229, 302]. Among those files were a roughly five-minute video featuring a prepubescent female approximately 11 to 13 years old being vaginally penetrated by an adult male penis; a 34-second video of a nude prepubescent female approximately 6 to 8 years old with an adult male penis being thrust into her mouth; and a nearly six-minute video depicting a nude prepubescent

[2] The engine was spelled with one "T" rather than two at the end (*i.e.,* SR20DET). [JA.287].

female approximately 7 to 10 years of age manipulating a sex toy into and digitally penetrating her vagina. [JA.229-31]. These videos were downloaded to the "Freenet\downloads" folder on October 5, 18, and 29, 2021, respectively. [JA.302, 304-07, 337-38].

An additional 330 child pornography files were stored in folders with titles including "PTHC" (a known acronym for preteen hardcore); "PTSC" (a known acronym for preteen softcore); "cam whores"; and "spy cams." [JA.226-27, 229]. They included an approximately 46-minute video depicting a prepubescent female approximately 10 to 13 years old who is bound in various positions and is whipped on the buttocks, has clothespins placed on her genitals and nipples, and has the non-lit end of a candle inserted into her anus; an approximately one-minute video depicting a prepubescent female approximately 9 to 11 years old being vaginally penetrated by an adult male penis; and an approximately five-minute video of a nude prepubescent female approximately 5 to 9 years old performing oral sex on and being vaginally penetrated by an adult male penis. [JA.231-33].

The SSD also contained photographs and videos of Baxter's then-seven-year-old [redacted] taken at the Baxter residence in July 2019 using an iPhone XS [JA.233-34, 237, 310-12, 314, 316 346-50]—the same type of phone Baxter had purchased approximately six months prior [JA.245-46]. From July 3 to July 13, 2019, the child and her mother, father, and then-five-year-old brother stayed at the Baxter home in

Melrose during a family vacation. [JA.342-43]. In two photographs taken on the family's first night at the Baxter residence, [redacted], A.F., is seen standing naked in a bathroom doorway. [JA.237-38, 309-11; Exs.26.1-2]. In one image, she is removing her top, which largely covers her face, and her naked body, including her pubic area, is visible. [JA.238; Ex.26.1]. An adult male, identified as A.F.'s father, is seen in the background with his back toward the camera. [JA.354; Ex.26.1]. The other image, taken one second later, captures A.F.'s naked lower body, including her pubic area. [JA.238-39, 311; Ex.26.2].

In a series of 16 photographs taken in rapid succession in Baxter's son's room the very next day, [redacted] is wearing a pink shirt with no pants or underwear as she sits, stands, and crawls on a bed. [JA.238-42, 313; Exs.27.1-16]. Each of the photos features her pubic area or vagina. [Ex.27.1-16]. Several train exclusively on her upper legs and vagina. [Exs.27.7-16].

In two videos, taken on July 11, 2019, [redacted] appears fully nude. [JA.234; Exs.25.1, 25.3]. In the first video, she, her brother, and Baxter's son are running around Baxter's son's room as Baxter is heard calling out that it is bathtime, and the camera pivots to focus on [redacted] as she jumps onto a bed and, lying on her back, spreads her legs and lifts her buttocks to expose her vagina and anus. [JA.235-36, 344, 349-50; Ex.25.1]. In the second video, Baxter is speaking to [redacted], who is heard off-camera, while the camera focuses on [redacted] lying and

rolling on a bed with her feet pointed away from the camera but her pubic area exposed. [JA.236-37; Ex.25.3].

An expert digital forensic analyst testified that the contents of the SSD were a backup, or "mirror image," of what had once been on the MacBook agents found near the SSD in the living room. [*See* JA.279-81, 289-91, 296-98; *see also* JA.221-22]. Asked how it could be that the SSD contained child pornography but the MacBook did not, the expert, Yu Kajita, explained that "the user could have deleted that once it was backed up, or it was directly started from the hard drive." [JA.290]. Kajita admitted on cross examination that although one can "sometimes" retrieve deleted items and "might expect" to find "artifacts," or traces, of such items, he found no artifacts of child pornography on the MacBook. [JA.322-23, 330-31]. He did, however, find artifacts of a program that enables users to "actually copy the content or the user information to a hard drive and start the computer from that hard drive." [JA.336; *see also* JA.335 (explaining that a user could "boot into [a] user profile from the backup state on the SSD drive")].

Connected device history showed that the SSD, which was "like a small little box" with no screen, was connected to the MacBook on 18 separate occasions during the month preceding the search warrant execution, including on the download dates of the child pornography files from the "Freenet/downloads" folder that were shown to the jury. [JA.292-95, 302; *see also* JA.333]. A photograph of Baxter's clothed

and subtly smiling [redacted] that was taken with the same make and model of iPhone as the naked photographs and videos of her was found on both the MacBook and the SSD. [JA.244, 316-17; Ex.16.1]. On the SSD, the photo was stored in the same folder as the naked material. [JA.316]. Other fully clothed photographs of A.F. alongside her family taken during the same visit to the Baxter home, which were found on Baxter's laptop, were not backed up to the SSD. [JA.317-18, 344; Ex.17].

Agent Montoya testified without objection that the iPhone XS is manufactured outside of Massachusetts [JA.244] and that his "research indicated that Samsung SSDs are manufactured in Korea." [JA.219]. The MacBook's place of manufacture was listed on the device as China. [JA.218].

**2. The defense case**

Baxter and his wife testified for the defense. They stated that they shared use of the MacBook, which had a "Patrick" profile and a "Vanessa" profile, and the password was the same for each. [JA.253, 361-62, 395, 402, 406]. Vanessa also had access to Baxter's phone. [JA.368, 414]. She never used the SSD. [JA.374, 398].

Both spouses confirmed that Vanessa typically retired to bed by about 9:00-9:30 p.m., whereas Baxter did not do so until closer to midnight. [JA.359-60, 393]. Baxter testified that during the period after Vanessa went to bed, he would usually watch television, play video games, or browse the internet, where he would plan

vacations or read discussions on Reddit or websites about cars. [JA.393, 400, 424]. When doing so, he frequently plugged the SSD into the computer "just as a habit to make sure it kept everything up to date." [JA.400]. He stated that he had purchased the SSD around the time he bought the computer but denied creating a password for the device or ever accessing its contents. [JA.397, 399, 426, 432, 437, 446]. And though he understood that "the FBI had observed" someone at his house attempting to download specific known child pornography on June 4, July 2, and August 10, 2021, and that some of that child pornography "was found in the collection of child pornography on the SSD," Baxter denied using or even knowing about Freenet. [JA.424, 429-30].

Baxter did admit to filming the videos of [redacted] that were found on the SSD. [JA.423, 442]. He testified that he did not specifically recall taking the videos but his "best guess" was that he "walked into the room because they were all jumping around on the bed and it was kind of fun and I was going to take a video" but "pulled the camera away and turned it off and then probably just immediately deleted the video" when he realized the children were naked. [JA.423]. He claimed that "the second video might have been I accidentally turned it back on with my thumb as I was standing there." [JA.441].

As for the photographs of [redacted], Baxter suggested they may have been taken by his then-three-year-old son. Baxter and Vanessa testified that their son

would sometimes take their phones and access the camera from the locked screen to take photos, resulting in "a lot of blurry pictures." [JA.378-79; *accord* JA.408-09, 412-13]. Baxter proffered this as a possible explanation for the photographs taken of A.F. on both July 3 and July 4, 2021. [JA.446-47]. He claimed he would have batch deleted the photographs and never saw their contents. [JA.447-48].

### C. Sentencing

Baxter's guidelines calculation was driven by the possession and receipt charges [PSR ¶¶35-36], to which a base offense of 22 attached [PSR ¶37]. The PSR, as amended by the district court at the sentencing hearing, *see infra* Parts IV.C-D, then added two levels because the material involved a prepubescent minor or a minor who had not attained the age of 12, USSG § 2G2.2(b)(2); four levels because the offense involved material depicting sadistic or masochistic conduct USSG § 2G2.2(b)(4); five levels based on the conclusion that Baxter engaged in a "pattern of activity involving the sexual abuse or exploitation of a minor" USSG § 2G2.2(b)(5); two levels because the offense involved the use of a computer USSG § 2G2.2(b)(6); five levels based on the number of pornographic images, USSG § 2G2.2(b)(7)(D); two levels based on a finding that A.F. was a vulnerable victim, USSG § 3A1.1(b)(1); and two levels for obstruction of justice, USSG § 3C1.1. [PSR ¶¶38-42; JA.559-60].

With an adjusted offense level of 44 and a criminal history category of I, Baxter faced a recommended Guidelines range of life imprisonment, which converted pursuant to USSG § 5G1.2(b) to a range of 840 months. [PSR ¶¶46, 83; JA.559-60]. The district court sentenced him to 240 months. [Add.2]. Eschewing imposition of a "monolithic number," the court specified that the sentence consists of terms of 14 years on each of Counts One and Two and 20 years on Count Three, to be served concurrently. [JA.583; *see also* Add.2].

## SUMMARY OF ARGUMENT

Baxter's requested relief is unwarranted, and this Court should affirm.

1. There is no basis for suppression. The search warrant affidavit described in detail how law enforcement agents identified the user of Baxter's IP address as the original requestor of child pornography and thus amply supported the magistrate judge's finding of probable cause. That the affidavit did not include a "mathematical formula" in addition to its layman's explanation is irrelevant. And at the very least, the good faith exception would apply.

2. Baxter's challenge to his child pornography production conviction fails. His arguments that *none* of the Count Three images satisfy the standards for "lascivious exhibition" and "use" of a minor are barred by the law of this circuit. And his tacit concession that the evidence was sufficient for the jury to find that at least *some* of the images constitute child pornography under this Court's case law

means the jury's verdict must stand. Furthermore, Baxter's argument that the child pornography production statute is unconstitutional as applied to him is unpreserved and without merit.

3. Baxter's unpreserved claims of evidentiary error do not warrant a new trial. His argument that the government's proof of a jurisdictional nexus rested on hearsay relies on an ambiguity he chose not to clarify and on plain-error review cannot benefit him. Moreover, there is no reasonable probability that the government's treatment of the Freenet tip or any of the other newly challenged evidence altered the verdict where the evidence overwhelmingly established that the SSD's user knowingly downloaded child pornography—and that Baxter was that user.

4. Baxter is also not entitled to resentencing. His challenge to the enhancement for engaging in a pattern of sexual exploitation of A.F. fails along with the sufficiency challenge on which it depends. His similarly unpreserved challenges to the vulnerable victim adjustment and obstruction-of-justice enhancement request relief the record makes clear the district court would not give.

## ARGUMENT

### I. THE SEARCH WARRANT WAS AMPLY SUPPORTED BY PROBABLE CAUSE

Baxter argues the affidavit in support of the search warrant for his home failed to establish probable cause that the user of his IP address knowingly attempted to

download child pornography. [Br.52-57]. Any reasonable reading of the affidavit refutes this claim.

### A. Standard of Review

This Court reviews de novo whether a search warrant is supported by probable cause. *United States v. Sheehan*, 70 F.4th 36, 43 (1st Cir. 2023). Probable cause means only a "[f]air probability," and the Supreme Court has cautioned that this "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

### B. There Is No Basis For Suppression

Baxter faults Montoya's affidavit for allegedly failing to explain how law enforcement identified the user of his IP address as an original requester of child pornography rather than simply a passive relayer on the Freenet network. Absent this explanation, he argues, the affidavit failed to establish probable cause to believe that the user acted with the requisite mens rea. Not so.

As noted above, Montoya's affidavit discussed the general operation of Freenet in detail, including how users request file blocks among their first-and second-line peers. It then explained that "[b]ecause a peer that is merely routing another peer's request would ask its peers for a significantly smaller portion of the pieces of a file than an original requestor, it is possible for the recipient of requests to determine" using a mathematical formula "whether a request is significantly more likely than not from an original requestor." [SA.9]. The affidavit also gave the

"number of requested file pieces, the total number of file pieces required to assemble the file, and the number of peers [Baxter's IP address] had" [SA.10] for each of the three requests it made to law enforcement computers for child pornography files.

Though Baxter faults Montoya for failing to provide the mathematical formula that enabled law enforcement to conclude based on these requests that Baxter was likely the original requestor, the layman's explanation his affidavit *did* provide was far more likely to prove useful to a magistrate judge trained not in mathematics but the law. *See United States v. Dickerman*, 954 F.3d 1060, 1066-67 (8th Cir. 2020) (encouraging affiants to "be mindful to explain their basis for probable cause in a way that is sufficiently comprehensive but still accessible to the judge reviewing the warrant application"). That explanation, combined with Montoya's representation that the mathematical formula is highly accurate based on the results of a peer-reviewed study and its successful use in other cases, was more than sufficient to support the finding of probable cause. *See United States v. Gray*, No. 7:22-CR-00001, 2022 WL 11588923, at *4 (W.D. Va. Oct. 20, 2022) (denying motion to suppress fruits of warrant supported by materially identical affidavit); *see also Dickerman*, 954 F.3d at 1066 & n.2 (suggesting in the course of applying the good faith exception that similar information would suffice to establish probable cause). And, at the very least, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Sheehan*, 70

F.4th at 51 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). *See Dickerman*, 954 F.3d at 1067.

## II. THE JURY RATIONALLY CONCLUDED THAT BAXTER PRODUCED CHILD PORNOGRAPHY

Baxter was convicted in Count Three of violating the child pornography production statute, which prohibits (among other things) "us[ing]" a minor to engage in "sexually explicit conduct" for the purpose of producing a visual depiction. 18 U.S.C. § 2251(a). "Sexually explicit conduct" is defined to include the "lascivious exhibition of the anus, genitals, or pubic area." 18 U.S.C. § 2256(2)(A). The government alleged that the bedroom photographs, bedroom videos, and bathroom photographs Baxter took of A.F. all satisfied this standard. [*See* JA.47, 464].

Baxter demurs, arguing there was insufficient evidence to show he "use[d]" A.F. to produce images that were "lascivious," entitling him to a judgment of acquittal [Br.25-29, 39-40] or, at a minimum, a new trial [Br.29-39]. He also contends that 18 U.S.C. § 2251(a) is unconstitutionally vague as applied to him. [Br.41-43]. His contentions are variously foreclosed and without merit.

### A. Standard of Review

Notwithstanding Baxter's failure to renew his motion for judgment of acquittal at the close of all evidence, the government agreed under the unique circumstances of this case that his motion was preserved. [JA.500-01, 505]. Review is accordingly de novo. *United States v. Charriez-Rolón*, 923 F.3d 45, 51 (1st Cir.

2019). The evidence must be viewed "in the light most favorable" to the verdict, and if the evidence, so construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, the conviction must stand. *Id.*

### B. Baxter's Newly Raised Statutory Arguments Are Foreclosed By The Law of the Circuit

Baxter's primary line of attack on his child pornography production conviction is to ask this Court to abandon its longstanding case law on two fronts. First, he requests that the Court define "lascivious exhibition" to require "'that the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor … exhibits sexual desire or an inclination to engage in … sexual activity.'" [Br.27 (quoting *United States v. Hillie*, 39 F.4th 674, 237, 685 (D.C. Cir. 2022)]. Second, he urges a definition of "use" that would require defendants to "play an active part, not only in the taking of the image, but in the minor's conduct depicted in the image that renders the conduct unlawful." [Br.40]. Baxter did not raise either argument in any form below. [*See* JA.465, 517-23]; *see also United States v. McCoy*, 108 F.4th 639, 644-45 (8th Cir.) (en banc), *cert. denied*, 145 S. Ct. 551 (2024). And regardless, neither is compatible with this Court's case law.

Baxter acknowledges that his construction of lascivious exhibition is "in tension with" decisions of this Court. [Br.27]. But it is more than that: it is foreclosed by the law of the circuit, which binds this panel. *See, e.g.*, *United States v. Lewis*, 517 F.3d 20, 24 (1st Cir. 2008). This Court has never adopted an

interpretation focusing on the minor's "sexual desire" or "inclination to engage in sexual activity." *See, e.g.*, *United States v. Silva*, 794 F.3d 173, 181 (1st Cir. 2015). To the contrary, it, like many other courts, has recognized that "[c]hildren do not characteristically have countenances inviting sexual activity, and the statute does not presume that they do." *United States v. Frabizio*, 459 F.3d 80, 89 (1st Cir. 2006); *see, e.g.*, *United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) (concluding that lasciviousness is "not the work of the child, whose innocence is not in question, but of the producer or editor of the video" (quoting *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999), and collecting similar cases)).

Baxter's "use" argument is likewise foreclosed by the law of the circuit. Consistent with every other court of appeals to address the question, this Court has held that "the statutory definition of 'use' is met when," as here, "a defendant personally films or photographs a minor engaged in sexually explicit conduct if the defendant intends to make such a depiction." *Ortiz-Graulau v. United States*, 756 F.3d 12, 18 (1st Cir. 2014) (collecting cases from the Second, Fourth, and Eighth Circuits); *see also United States v. Wright*, 774 F.3d 1085, 1091 (6th Cir. 2014); *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017); *Hillie*, 39 F.4th at 691.

Baxter has not made, and has therefore waived, any argument that an exception to the law of the circuit applies. *See United States v. Mayendía-Blanco*, 905 F.3d 26, 32 (1st Cir. 2018).

### C. Under This Court's Controlling Law, A Rational Jury Could Find the Count 3 Images Depict "Lascivious Exhibitions" of A.F.'S Genitals, Anus, or Pubic Area

Baxter alternatively argues that at least some of the Count Three depictions do not amount to lascivious exhibitions under this Court's controlling case law and that the absence of a special verdict form indicating which of the depictions the jury's verdict rested on necessitates a new trial. Both contentions are wrong.

#### 1. The jury rationally could have found that each of the images was pornographic

The jury could have rationally concluded that the bedroom photographs, bedroom videos, and bathroom photographs and all met the standard for lasciviousness.

"Lasciviousness is a commonsensical term," and determining "whether a given depiction is lascivious is a question of fact for the jury." *Frabizio*, 459 F.3d at 85. In making that determination, juries are often guided by a "nonexclusive list of factors," referred to as the *Dost* factors, which include:

> (1) whether the genitals or pubic area are the focal point of the image;
>
> (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity);
>
> (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age;
>
> (4) whether the child is fully or partially clothed, or nude;

> (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and
>
> (6) whether the image is intended or designed to elicit a sexual response in the viewer.

*United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom.*, *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.1987)); [*see also* JA.463 (district court instruction regarding these factors)]. This Court has cautioned, however, that although the *Dost* factors are "relevant," they are not "the equivalent of—[n]or establish[] the limits of—the statutory term "lascivious." *Frabizio*, 459 F.3d at 87 (quotations omitted).

**a. Bedroom photographs**

Baxter does not dispute that the 16 photographs he took in close succession on July 4, 2019 are pornographic. Nor could he. A.F.'s genitalia are the clear focal point of the images: her vulva is featured "close-up and near center, and her face is frequently not in frame at all" [JA.532]. *Cf. Amirault*, 173 F.3d at 33 ("Although the girl's pubic area is on clear display, there is no close-up view of the groin, and the genitals are not featured in the center of the composition."). She appears on a bed and, in some of the photographs, on all fours, both of which are associated with sexual activity. *Cf. id.* (finding relevant that a beach, "unlike a bedroom or boudoir, does not evoke associations of sexual activity," and the child's pose was "not one

that is typically associated with sexual activity."). The jury would have had no difficulty in concluding the images were lascivious.

**b. Bedroom videos**

The jury would have been equally well supported in finding the July 11, 2019 bedroom videos lascivious. In the first video, A.F.'s vulva and anus, although not zoomed in on, are nonetheless the focal point, positioned at or about the center of the frame as A.F. parts her legs and lifts her buttocks. *See, e.g.*, *United States v. Orlandella*, 96 F.4th 71, 86 (1st Cir. 2024) (determining that the genitals and pubic area were the focal point where "the female's legs are parted and the pubic area is plainly visible," "so the pictures 'could reasonably be seen as focusing on or particularly drawing attention to the … pubic area[] and, specifically, to the[] vagina[]'" (quoting *Frabizio*, 459 F.3d at 86)); *see also United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016) ("There is no requirement in the statute that the creator zoom in on the pubic area. Nor is there a requirement that the pubic area be the sole focus of the depiction."). The setting and pose are sexually suggestive, *see supra* Part II.C.1.a, and the child's gaze is trained directly on the camera. *Cf. Amirault*, 173 F.3d at 33 ("[H]er gaze is averted from the viewer, and, as we have stated, her legs are not widespread."). The jury could have rationally rejected Baxter's effort to portray this as an innocent video of a "nude child playing on a bed" while other children played nearby [Br.31-32], concluding instead that he quickly diverted the

camera's initial focus on the other children to A.F. to capture a display "intended or designed to elicit a sexual response in the viewer." *Silva*, 794 F.3d at 181 (finding evidence sufficient to show lasciviousness where films "included scenes … of the boys wrestling or showering in positions that gave the camera a clear shot of their genitalia, or lounging, standing, or sitting in postures that prominently displayed their genitalia in the camera shot").

So too with the second video, which features A.F. looking at the camera while lying naked on her back, rolling onto her stomach, and then rolling again onto her back. Baxter's argument that this video is "precluded" from constituting a lascivious exhibition because A.F.'s "vagina is not visible" [Br.30] reads the words "pubic area" out of the statute. 18 U.S.C. § 2256(2)(A). His effort to downplay the sexually suggestive nature of the video by pointing to "other children playing in a natural manner" [Br.31] meanwhile rings especially hollow here, where, despite being heard on the video speaking to [redacted], Baxter trained the camera exclusively on A.F.'s naked body for the full 15-second duration of the video.

**c. Bathroom photographs**

The conclusion that the bathroom photographs taken on July 3, 2019 depicted "lascivious exhibition of [A.F.'s] genitals or pubic area" is also a rational one. The photographs are unnaturally focused on A.F.'s naked lower body; indeed, her face is almost entirely covered by her shirt in the first photograph, and her head and upper

torso are wholly absent from the second. Her genitals, even if not as "central" to these photographs [Add.34 n.3] as to other materials Baxter produced, are nevertheless near the center of the frame. And adding to the overall effect was the bathroom setting, which the jury could have concluded was sexually suggestive. *See, e.g.*, *United States v. Spoor*, 904 F.3d 141, 149 (2d Cir. 2018) (collecting cases recognizing that "bathrooms also can be the subject of sexual fantasy"). Focusing on these "objective criteria of the photograph[s'] design," *Amirault*, 173 F.3d at 35,[3] and the absence of any artistic or otherwise licit basis for them, *see Silva*, 794 F.3d at 181, the jury could have rationally concluded they are pornographic.

#### 2. *Yates* does not apply

The government sought [D.118] and with Baxter's assent [D.123] received an instruction requiring that the jury "be unanimous as to which image or images or video or videos" formed the basis for conviction on Count Three [JA.464], which, as noted, combined the July 2019 photographs and videos of A.F. into a single count.

---

[3] This Court has not decided the circumstances (*e.g.*, possession or receipt vs. production, completed crime vs. attempt) under which juries may look beyond the four corners of an image in assessing its lasciviousness, *see Frabizio*, 459 F.3d at 89-90 & n.15, and it need not do so here. Contrary to Baxter's suggestion [*see* Br.32-34], the district court did not purport to rely on his subjective intent in reasoning that the jury could find the bathroom images lascivious. [*See* JA.532 n.3 (citing *United States v. Vallier*, 711 F. App'x 786, 788 (6th Cir. 2018) (unpublished), which merely recognized that "secretly videoed minors engaged in otherwise innocent activities" are not exempt from the reach of § 2251(a))]. Nor, for the reasons outlined, would a jury need to look beyond the four corners of the images to reach that conclusion anyway.

Though that charging decision "inure[d] to [his] benefit in various ways" [D.118 at 2], Baxter contends it created a problem the unanimity instruction cannot cure because "neither the [bedroom] videos nor the bathroom photographs were sufficient to support the conviction" and "'it is impossible to tell'" whether the jury selected only these images or the unchallenged bedroom photographs in addition or instead. [Br.34 (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957))]. This argument is unpreserved, *see United States v. Pullman*, No. 23-1508, 2025 WL 1553674, at *12 (1st Cir. June 2, 2025) (*Yates* claims not raised in the district court are subject to review only for plain error), waived by Baxter's failure to proffer a plain-error analysis, *id.*, and fails along with Baxter's sufficiency challenge in any event, *see supra* Part II.C.1. It also fails independent of the standard of review or the merits of the sufficiency challenge because *Yates* has no application here.

*Yates* "extends only to cases in which one of the possible bases of conviction was legally erroneous." *United States v. Nieves-Burgos*, 62 F.3d 431, 436 (1st Cir. 1995) (citing *Griffin v. United States*, 502 U.S. 46, 55-56 (1991)). "'[L]egal error' means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence." *Griffin*, 502 U.S. at 59 (rejecting the contention that "'legal error' includes inadequacy of evidence"). Baxter's challenge to the jury's Count Three verdict falls squarely in the latter category. He does not contend that the verdict "possibly rest[ed] on an invalid ground as a result of *an error of law*."

*Nieves-Burgos*, 62 F.3d at 436 (emphasis added). His challenge is instead one that this Court has unfailingly treated as a question of evidentiary sufficiency, *see, e.g.*, *Silva*, 794 F.3d at 182 (citing *Frabizio*, 459 F.3d at 85), and, thus, it does not provide a basis for setting the jury's determination aside, *Nieves-Burgos*, 62 F.3d at 436.

The cases on which Baxter relies do not help him. *United States v. Dubon-Otero*, as Baxter admits [Br.37], did not decide the merits of the *Yates* argument. *See* 292 F.3d 1, 6, 15 n.21 (1st Cir. 2002). But even beyond that, the argument was premised on the defendants' contention that the district court had *legally erred* by instructing the jury in a manner that allowed conviction for conduct occurring before any federal benefits were received. *Id.* at 14-16 & n.21; *see also United States v. Vavic*, 2025 WL 1540782, at *10 (1st Cir. May 30, 2025) ("[A] *Yates* 'error occurs when a jury *is instructed* on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory.'" (quoting with added emphasis *Skilling v. United States*, 561 U.S. 358, 407 (2010))). Baxter's discussion of out-of-circuit cases overlooks the same salient point. *See United States v. Ellyson*, 326 F.3d 522, 530-31 (4th Cir. 2003) (vacating conviction where district court erroneously instructed that jury could convict based on images that "appeared to be" of a minor and it was impossible to tell whether verdict rested on that unconstitutional theory or on images of actual minors); *United States v. Gallagher*, 90 F.4th 182, 192, 194 (4th Cir. 2024) (district court erroneously instructed jury that statement that was

literally true but misleading could support conviction); *United States v. Hanafy*, 124 F. Supp. 2d 1016, 1021-30 (N.D. Tex. 2000) (two of three conspiratorial objects deemed as a matter of statutory interpretation to be "legally defective").

That non-lascivious images are protected speech [Br.35] does not alter the analysis. As this Court has observed:

> The dividing line that the Supreme Court drew in *Griffin* was based on the distinct roles of judge and jury in our system of justice, not the presence vel non of constitutional issues. We entrust trial judges with the grave responsibility of giving juries a proper view of the law, and when they fail to do so, reversal may be warranted because "there is no reason to think that [jurors'] own intelligence and expertise will save them from that error." *Griffin*, 502 U.S. at 59.
>
> On the other hand, jurors are endowed with expertise in factfinding. *See id. That presumed expertise is not vitiated even when performing the factfinding task requires them to separate constitutionally protected conduct from illegal conduct. See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-82 (1964).

*United States v. Mehanna*, 735 F.3d 32, 50-51 (1st Cir. 2013) (emphasis added).

Because Baxter's challenge to the bedroom videos and bathroom photographs is premised on evidentiary insufficiency and he concedes the sufficiency of the evidence for the jury to find the bedroom photographs lascivious, his Count Three conviction must stand.

### D. § 2251(a) Is Not Unconstitutional As Applied to Baxter

Baxter additionally asserts that even if the evidence was sufficient to support his conviction, 18 U.S.C. § 2251(a) is unconstitutional as applied to him because his conduct is "'not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause.'" [Br.41-42 (quoting *United States v. Morales-de-Jesus*, 372 F.3d 6, 18 (1st Cir. 2004))]. Baxter did not raise this argument below, fails to explain how he could satisfy the plain-error standard that applies as a result, and could not, in any event, point to a binding precedent or other legal mandate compelling the conclusion that the statute is unconstitutional as applied to these facts. His claim is therefore waived, *see United States v. Rathbun*, 98 F.4th 40, 58 (1st Cir. 2024) (citing *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016)), and would fail even if not, *see United States v. Langston*, 110 F.4th 408, 419 (1st Cir.), *cert. denied*, 145 S. Ct. 581 (2024) (citing *United States v. Grullon*, 996 F.3d 21, 33 (1st Cir. 2021)).

Seeking to avoid the consequence of his forfeiture, Baxter contends that a general Rule 29 motion preserves as-applied constitutional challenges. Not so here. At least one court has granted relief from plain-error review for as-applied challenges unveiled for the first time on appeal where the defendant preserved his sufficiency challenge and the "as-applied challenge effectively reduces to a question of evidentiary sufficiency." *United States v. Dennis*, 132 F.4th 214, 227 (2d Cir.

2025) (reviewing de novo where the constitutional question was determined by whether "the evidence [was] sufficient to prove 'true threats' falling outside First Amendment protection"). But that is not the circumstance presented here, and not a single case Baxter cites supports a broader exception to the general rule, *Langston*, 110 F.4th at 419, that arguments not advanced in the district court are reviewable only for plain error. *See United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (observing without addressing the question of preservation that the as-applied challenge raised *in that case* was "functionally identical" to sufficiency review, for reasons similar to those articulated in *Dennis*); *Morales-de Jesus*, 372 F.3d at 8 (not addressing the question of preservation); *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017) (unpublished) (suggesting that an as-applied challenge should be raised post-trial, without addressing the consequences of failure to do so in the first instance in the district court).

Baxter's challenge, to be clear, would fail even if preserved. If surreptitiously creating for private consumption recordings of the teenaged daughter of one's girlfriend in various states of undress "falls within the sphere of activity that Congress legitimately regulates," *United States v. Poulin*, 631 F.3d 17, 21-22 (1st Cir. 2011), surely Baxter's creation of pornographic images of [redacted] does too. However, this Court should decline Baxter's invitation to create an

exception that would swallow the plain-error rule and find his as-applied challenge unpreserved.

## III. THERE WAS NO REVERSIBLE EVIDENTIARY ERROR

Baxter next contends various evidentiary errors require a new trial as to all counts of conviction. [Br.43-52]. None of his evidentiary challenges is preserved, and none entitles him to a new trial.

### A. Standard of Review

Baxter concedes that he raised none of his evidentiary challenges below and that, as a result, review is for plain error. [Br.43]. To prevail under this standard, Baxter must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001). He bears the "heavy burden" under the third plain-error prong of showing a "reasonable probability" that admission of the newly challenged portions of testimony altered the verdict. *United States v. Velázquez-Aponte*, 940 F.3d 785, 793, 800 (1st Cir. 2019).

### B. The Admission of Testimony Regarding Freenet, Even To The Extent Erroneous, Did Not Affect Baxter's Substantial Rights

Baxter first challenges the admission of evidence relating to Freenet, arguing that Montoya impermissibly relied on collective knowledge when testifying that

another agent observed someone using Baxter's IP address attempting to download child pornography using the platform. [Br.43-48]. He further contends that the government failed to lay a proper foundation for Montoya's personal knowledge that Freenet required requestors to have a key to request child pornography files. [Br.47].

The government concedes that Montoya's testimony concerning the tip received from the FBI's Child Exploitation Operational Unit that someone using an IP address associated with Baxter's residence was attempting to download child pornography from Freenet implicates concerns this Court has identified in previous cases. *See United States v. Vázquez-Rivera*, 665 F.3d 351, 358 (1st Cir. 2011); *United States v. Benitez-Avila*, 570 F.3d 364, 372 (1st Cir. 2009). But even assuming this satisfies the first two prongs of plain error, Baxter's claim would fail on the third and fourth.

It would have been clear to the jury even without evidence of the tip (or any cross examination or closing argument about it[4]) that the SSD's user had downloaded child pornography from Freenet: the backup account on the SSD contained internet search history related to Freenet, listed Freenet as a favorited bookmark, included Freenet installation instructions, contained hundreds of

[4] The government had planned to call the FBI agent who observed the Freenet requests to testify [D.85] and failed to appropriately recalibrate its presentation of evidence and argument when it did not.

messages from Freenet's messaging board system, and included a "Freenet/downloads" folder with over 90 child pornography files. The jury received further evidence that the three "Freenet/downloads" videos played for it were downloaded from Freenet on three separate dates and that the SSD was connected on those same dates to the MacBook Baxter shared with his wife. Baxter admitted that he owned the SSD at that time, and both he and his wife testified that he alone used it. Forensic analysis also confirmed Baxter's link to the device, showing that the Apple ID associated with the "Backup" profile containing child pornography was Baxter's personal email, the profile's internet search history showed access to a "Baxter, Patrick" Outlook email and searches for an elementary school one of his children attended, and stored within the profile were photographs and videos taken on his iPhone. [*See* JA.472-73 (emphasizing this evidence in closing)].

This evidence thoroughly and convincingly established that Baxter downloaded child pornography. As the government argued to the jury about the Freenet videos found on his device, "if he didn't download them onto his secure SSD, well, then who did?" [JA.478]. The strength of the evidence defeats Baxter's claim that the erroneously admitted evidence requires a new trial on Counts One and Two. *Cf. Vázquez-Rivera*, 665 F.3d at 364 (improper testimony identifying defendant as individual who communicated with agent posing online as underage girl required reversal where agents did not directly observe the individual,

defendant's wife testified that other adult males had access to defendant's home and computers, and government did not investigate several IP addresses from which the email account that corresponded with the purported underage girl was accessed). And that, in turn, dispels his argument of spillover prejudice as to Count Three.

In an effort to undermine the jury's conclusion that he downloaded the child pornography *knowingly*, Baxter challenges Montoya's testimony, based on having "observed Freenet in [his] training" [JA.248], that Freenet users had to have a key to request child pornography for download. He cites *United States v. O'Donovan*, 126 F.4th 17 (1st Cir. 2025), to argue the government failed to lay sufficient foundation for Montoya's personal knowledge, but *O'Donovan* does not help him on plain-error review.

*O'Donovan* held that an FBI examiner's testimony that he knew from FBI training classes that iMessages were sent over the internet was inadmissible because it "had no grounding in the examiner's own perception or experience." *Id.* at 37. Unlike O'Donovan's challenge to that testimony, Baxter's challenge to Montoya's testimony is unpreserved. *Id.* at 36. And unlike the FBI examiner, who admitted that his knowledge "was based solely on what an FBI instructor had *told* him," *id.* (emphasis added), Montoya testified that he *observed* Freenet in his training. Observations are grounded in "perception," *id.* at 37. *See United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir. 1994) ("Evidence is inadmissible under Rule 602 only if

in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived *or observed* that which he testified to." (emphasis added) (quotation omitted)). And at the very least, it is far from clear or obvious that the opposite is true here. The government operates Freenet nodes, and so the training could very well have shown trainees, as opposed to merely told them, how Freenet works. That ambiguity is fatal to Baxter's unpreserved claim. *See United States v. Etienne*, 772 F.3d 907, 916 (1st Cir. 2014) ("To the extent that there is any ambiguity about [the officer's] knowledge …, we will not, on plain error review, permit [defendant] to gain any benefit from his choice not to clarify the ambiguity.").

Also devastating is the sheer volume of child pornography Baxter possessed. Even without Montoya's testimony about Freenet keys, no rational jury would believe that Baxter came to possess hundreds of child pornography files unwittingly. That testimony therefore could not have affected Baxter's substantial rights or the fairness of the proceedings.

### C. The Admission of Alleged "Hearsay Testimony" To Satisfy the Jurisdictional Elements, Even To The Extent Erroneous, Did Not Affect Baxter's Substantial Rights

Baxter next challenges the admissibility of the evidence used to satisfy the jurisdictional element of each of his counts of conviction. These claims also fail.

The jury was instructed that the jurisdictional elements of Counts One (possession) and Two (receipt) could be satisfied if either (1) an image or video had

been transmitted over the internet, or (2) the device used to store the image was manufactured outside of Massachusetts. [JA.464]; *see* 18 U.S.C. § 2252A(a)(2)(A) & (5)(B). Baxter argues Montoya's testimony that his "research" indicated the SSD containing child pornography was manufactured in Korea was based on hearsay [Br.48-49] and the MacBook's "Assembled in China" label cannot fill this void to satisfy the second method of proving jurisdiction because the MacBook did not contain child pornography or evidence that child pornography had been deleted from it [Br.49 n.16]. The Court need not address these contentions because the first method of proving jurisdiction provides a clear path to affirmance.

Evidence unchallenged on appeal proved that the child pornography contained in the "Freenet/downloads" folder was downloaded from Freenet. [JA.302-07]. Baxter dismisses this evidence in a footnote, asserting that the government "did not argue that alternative to the jury," the evidence "contained only a few fleeting references to Freenet utilizing the internet," and "Montoya's training did not provide a sufficient basis in personal knowledge for his testimony" that Freenet used the internet in any event. [Br.48 n.14]. "But regardless of what the government argued to the jury, the jury was entitled to draw its own inferences and conclusions from the evidence before it." *United States v. Condron*, 98 F.4th 1, 21 n.27 (1st Cir. 2024). And that evidence was clear that Freenet utilizes the internet. [JA.208 (describing Freenet as "internet-based")]. Moreover, Baxter's argument that Montoya's training

was inadequate to supply him with personal knowledge fails on plain error for the reasons already discussed. [*Supra* Part III.B].

Baxter's attack on the evidence used to satisfy the Count Three (production) jurisdictional element is equally unavailing. The jury was instructed that this element required that the images be produced, transmitted, or stored using a device that was manufactured outside of Massachusetts [JA.462], *see* 18 U.S.C. § 2251(a), and the government argued that Baxter's use of the iPhone to take the images was one way the element was satisfied [JA.481]. Baxter is correct that Montoya's testimony failed to lay a foundation for his personal knowledge that that iPhones are "manufactured outside of Massachusetts" [JA.244]. *See Etienne*, 772 F.3d at 920 (identifying lack of foundation as plain and obvious error). But it stands to reason that a seasoned FBI special agent who has investigated "[a]t least 100" child exploitation cases [JA.206-07] very well could have had personal knowledge of the issue. *See generally United States v. Woods*, 321 F.3d 361, 363-65 (3d Cir. 2003) (discussing arguments for personal knowledge based on evidence excepted from hearsay bar under Fed. R. Evid. 803(6), 803(17) and 807). And here, again, Baxter cannot "gain any benefit from his choice not to clarify the ambiguity" in Montoya's testimony. *Etienne*, 772 F.3d at 916; *accord United States v. Nieto*, 60 F.3d 1464, 1468 (10th Cir. 1995) ("To the extent a lack of foundation in some answers makes it unclear whether certain testimony was based on personal knowledge or hearsay,

we conclude that admitting such evidence in the absence of an objection did not constitute plain error.”).

### D. None of the Other Allegedly Inadmissible Evidence Warrants a New Trial

Baxter’s various additional evidentiary challenges also fail on plain error review.

Baxter argues that Montoya’s testimony that the backup account on the SSD contained internet search history related to Freenet, listed Freenet as a favorited bookmark, included Freenet installation instructions, and contained hundreds of messages from Freenet’s messaging board system plainly violated the best evidence rule. [Br.50-51 (citing Fed. R. Evid. 1001 & 1002)]. He has not, however, carried his burden of showing that this error affected his substantial rights. Had Baxter made a best-evidence objection below, the government would have simply put the underlying—and undisputedly admissible—forensic records into evidence. Baxter does not (and could not) argue that there is a reasonable probability the jury would have reached a different result had it seen the underlying records in their entirety instead of considering only Montoya’s testimony about them.[5] *See United States v.*

[5] Baxter also asserts in a single sentence that Montoya’s testimony regarding the SSD’s Freenet search history was hearsay. [Br.50 (referencing personal knowledge discussion at Br.48-49)]. This argument is waived for lack of developed argumentation. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). And

*Deason*, 965 F.3d 1252, 1266-67 (11th Cir. 2020) (rejecting an unpreserved best-evidence challenge on the same basis).

Baxter's best-evidence challenge to Montoya's testimony that the SSD contained search history related to the AliExpress Flying Train Store [Br.50-51] fails for the same reason, and his hearsay attack on Montoya's explanation that the store "appear[ed]" "'based on [his] open source research'" to be "'a marketplace that sells lingerie, to include thongs, in children's sizes'" [Br.50 (quoting JA.223-24)] fares no better. Montoya's testimony was relevant to show that Baxter had navigated to a site that purported to sell such items and did not depend on whether the site *in fact* did so. And because the content of the website was not offered for the truth of any statement asserted therein, it was not hearsay, Fed. R. Evid. 801(c)—much less clearly or obviously so. *See, e.g.*, *Firehouse Rest. Grp., Inc. v. Scurmont LLC*, No. 4:09-CV-00618-RBH, 2011 WL 3555704, at *5 (D.S.C. Aug. 11, 2011) (printouts of websites not hearsay when offered "to show what a consumer would find when searching the Internet" (citing *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 141 (4th Cir. 2000)).

Nor was Kajita's testimony that his "simple Google search" suggested the SSD password related to a Nissan engine. The testimony was offered "merely to

---

in any event, the basis for it is unclear given that Montoya testified he personally observed the extraction data. [JA.221].

show the results observed by [Kajita] when he conducted his Google search," not to prove "the truth of the underlying contents of the websites" identifying the SR20DET as a type of Nissan engine. *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 CIV. 5804 (GEL), 2009 WL 959775, at *9 n.6 (S.D.N.Y. Apr. 8, 2009). Whether SR20DET was in fact a Nissan engine or just generally "discussed on the internet" as one, *id.*, the jury could infer that Baxter—an admitted car enthusiast who "spen[t] time on websites reading about cars" [JA.424]—chose "SR20DETT" as a password based on the association.

Baxter has failed to carry his burden of demonstrating not only a clear or obvious error but also a reasonable probability of a different result had the district court sua sponte excluded this evidence as hearsay. His barebones assertion that the AliExpress Flying Train Store evidence had "highly prejudicial connotations" fails for lack of developed argumentation, *Zannino*, 895 F.2d at 17, and regardless, a single-sentence description of the website's offerings was a drop in the bucket compared to the reams of child pornography demonstrating the SSD's user's prurient interest in prepubescent girls. And far more than the SSD password demonstrated that the user of that device—including the "Backup" profile containing child pornography—was Baxter—including the connected device history, the Apple ID, internet search history, and stored contents that had been created on Baxter's iPhone. Indeed, Baxter admitted, and his wife's testimony confirmed, that he alone used the

SSD. Though he denied any knowledge of the "Backup" profile contents, there was only one rational conclusion for the jury to draw when the only other occupants of the home were children then aged three and one. There is no likelihood in these circumstances that the challenged evidence spelled the difference between conviction and acquittal.

## IV. BAXTER IS NOT ENTITLED TO RESENTENCING

Baxter lastly challenges the procedural reasonableness of his 20-year sentence, arguing the district court erred in imposing two enhancements and one adjustment to his offense level. None of the alleged errors warrants resentencing.

### A. Standard of Review

This Court "review[s] preserved objections to the district court's legal interpretation of the Sentencing Guidelines de novo, and review[s] for clear error the court's factual findings." *United States v. Nagell*, 911 F.3d 23, 29 (1st Cir. 2018). Unpreserved objections are reviewed for plain error. *United States v. Pinkham*, 896 F.3d 133, 136-37 (1st Cir. 2018).

### B. Baxter Engaged in a Pattern of Sexual Exploitation of a Minor

The district court imposed a five-level enhancement pursuant to USSG §2G2.2(b)(5) for "a pattern of activity involving the sexual abuse or exploitation of a minor." [JA.559; PSR ¶39]. A "pattern" "means any combination of two or more separate instances," and "sexual abuse or exploitation" is defined to include

"conduct described in … § 2251(a)." USSG §2G2.2(b)(5) comment. n.1. Baxter argues the enhancement is inapplicable because the photographs and videos he took of [redacted] do not fall within § 2251(a) [Br.57-59], but that challenge is both unpreserved and unavailing.

The final PSR, issued two days prior to sentencing [SA.493; D.157], imposed a five-level adjustment pursuant to USSG § 4B1.5(b)(1) for "a pattern of activity involving prohibited sexual conduct" [PSR ¶44], and the five-level enhancement pursuant to USSG § 2G2.2(b)(5) [PSR ¶39]. Baxter objected in writing to the former but not the latter. [*See* PSR, Def's Objections; JA.537-38]. At the sentencing hearing, the district court ruled that although it was not clear that USSG § 4B1.5(b)(1) and USSG § 2G2.2(b)(5) "are actually double counting or duplicative math, … it's close enough" that the court would apply only USSG § 2G2.2(b)(5).[6] [JA.555]. Defense counsel thereafter noted that "[s]ome of th[e enhancements] were added two days ago" but confirmed he was prepared to go forward that day and was "objecting to all the enhancements that Probation has requested" [JA.556-57], "rely[ing] on the previously submitted brief for that argument" [JA.559].

Even assuming, favorably to Baxter, that his objection to § 4B1.5(b)(1) preserved an objection to the "virtually identical" USSG § 2G2.2(b)(5), *United*

[6] *But see United States v. Dowell*, 771 F.3d 162, 170-71 (4th Cir. 2014) (affirming district court's rejection of double-counting claim).

*States v. Gaffney-Kessell*, 772 F.3d 97, 101 (1st Cir. 2014), Baxter's sentencing memorandum (the only previous "brief" on the "pattern" issue) had argued that "the photographs and videos taken … in July 2019 constituted a single occasion because they were taken close in time and during a single on-going visit." [JA.538]. Baxter abandons that argument on appeal, recognizing that although the July 4 bedroom photographs taken in close succession constitute a single "instance," the July 3 bathroom pictures and July 11 videos were separate events. [*See* Br.58]. In its stead he argues that none of these instances amounted to sexual exploitation of a minor—a distinct and unpreserved claim that is reviewable only for plain error, *see Pinkham*, 896 F.3d at 137; *United States v. Taylor*, 845 F.3d 458, 460 (1st Cir. 2017), but unavailing under any standard.

Each of July 3 and 4, 2019 (when Baxter took the photographs of [redacted]) and July 11, 2019 (when he took the videos) qualifies as a separate "instance," and, as set forth above, the images within each of these categories qualify as sexual exploitation of a minor. [*See supra* Part II.C]. At the very least, *an* image within two or more of these categories does. Baxter's argument to the contrary is derivative of his sufficiency challenges and fails for the same reason.

### C. The District Court Did Not Plainly Err in Applying the Vulnerable Victim Adjustment

The district court at sentencing applied an adjustment under USSG § 3A1.1(b)(1) based on A.F.'s status as a vulnerable victim. [JA.556, 560]. Baxter

does not challenge the merits of the determination that A.F. was unusually vulnerable due to age [JA.559] but does argue that the adjustment resulted in "double counting" because the court separately imposed a two-level enhancement under USSG § 2G2.2(b)(2) based on his possession of "material involv[ing] a prepubescent minor or a minor who had not attained the age of 12 years." [Br.59-60]. Here again, his challenge is both unpreserved and unavailing.

Baxter did not advance his double counting argument (or any like argument, *cf. supra* Part IV.B) below. And contrary to his suggestion, neither his blanket objection to "any of the enhancements that the court finds" [JA.559] nor the district court's statement that his pro forma objection "will be preserved" [JA.557] make it so. *See United States v. Ahrendt*, 560 F.3d 69, 76 (1st Cir. 2009) (even "adopt[ing] a generous stance in light of [defendant]'s pro se status at sentencing," his generic objection "to the 'whole thing'" could not "be fairly interpreted as giving notice to the court of" his challenges to specific sentencing enhancements). *Cf. United States v. Henry*, 848 F.3d 1 (1st Cir. 2017) (unrenewed objections to jury instructions deemed unpreserved notwithstanding statement by district court after jury charge that any objections previously made will be saved). Baxter must therefore demonstrate that application of the enhancement was plainly erroneous, *Ahrendt*, 560 F.3d at 76, and that is a hurdle he cannot clear.

The commentary to the vulnerable victim adjustment states that it does not apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline," such as when, for example, "the offense guideline provides an enhancement for the age of the victim" and that is the factor that renders "the person" unusually vulnerable. USSG § 3A1.1 comment. n. 2. Consistent with this commentary, the district court could not have applied USSG § 3A1.1 based on the age of the victims of the child pornography Baxter was convicted of receiving and possessing. [*See* PSR ¶38 (applying USSG § 2G2.2(b)(2) based on videos described in PSR ¶22)]. But that is not what the court did. Rather, the court applied USSG § 3A1.1 based on the age of the [redacted] Baxter sexually exploited.

The district court's approach is consistent with—and, at the very least, not clearly or obviously *in*consistent with—the guideline commentary. The commentary encompasses within its definition of "vulnerable victim" "a person who is a victim of the offense of conviction and any conduct for which the defendant is accountable under 1B1.3 (Relevant Conduct)." USSG § 3A1.1 comment. n.2; *see United States v. Chin*, 965 F.3d 41, 54 (1st Cir. 2020) ("To come within the guidelines' definition of 'victim,' one need not be a victim of the charged offense so long as one is a victim of the defendant's other relevant conduct" (cleaned up)). A.F. was "a victim" under this definition [PSR ¶40], but not "the victim" whose age-related vulnerability was already accounted for in "the offense guideline." She was

a different victim whose distinct harm was not otherwise reflected in the guideline calculation at all. [*See* PSR ¶36 (noting that all three counts grouped and the production counts drove the offense level determination)]. Adjusting Baxter's offense level based on *her* age-related vulnerability was therefore not impermissible double counting.

The cases Baxter cites to argue otherwise are unilluminating. Neither is factually on all fours or addresses the argument presented here. *See United States v. Ramos*, 739 F.3d 250, 251-52 (5th Cir. 2014) (addressing age-related vulnerable victim enhancement applied based on same class of victims whose age had triggered USSG § 2G2.2(b)(2) enhancement); *Dowell*, 771 F.3d at 170-75 (addressing vulnerable victim enhancement applied based on extremely young age of production victim to ungrouped production and trafficking counts to which § 2G2.1(b)(1) and § 2G2.2(b)(2), respectively, had been applied). Moreover, neither is binding on this Court. And absent binding authority or a result that is "compelled by the guidelines' language itself," Baxter's claim flounders on the second prong of plain error review. *United States v. Romero*, 906 F.3d 196, 207 (1st Cir. 2018).

His claim additionally fails on prongs three and four. The uncontested facts demonstrate that A.F. was also "unusually vulnerable for [a] reason unrelated to age"—namely, the familial relationship with Baxter that enabled his presence as she was naked in her cousin's room and the bathroom [*see* PSR ¶¶24-27]. *See United*

*States v. Gawthrop*, 310 F.3d 405, 412 (6th Cir.2002) (affirming adjustment with respect to defendant's minor granddaughter on the basis of familial relationship, not age). What is more, the probation officer, the government, and the court were all "on the same page" in seeking to ensure A.F.'s vulnerability was reflected in the offense-level calculation. *United States v. Messner*, 37 F.4th 736, 744 (1st Cir. 2022). The draft PSR had applied a "relative" adjustment pursuant to USSG § 2G2.1(b)(1)(5) based on Baxter's status as A.F.'s [redacted][7] [GSA.10]; the final PSR applied a victim-related adjustment pursuant to USSG § 3B1.3 based on Baxter's abuse of a position of trust a A.F.'s [redacted] [PSR ¶40]; and the district court applied the vulnerable victim adjustment in place of those objected-to offense-level increases only to avoid "whatever the issues may have been with" them. [JA.558-59; *see* Def.'s Obj. #2; JA.535-36]. The point, as the government argued, and the district court evidently agreed, was to "acknowledge[e] that Defendant and [A.F.] were not strangers and that Defendant's ability to sexually exploit [her] was enabled, or at least, facilitated by, their relationship." [D.154 at 9]. In these circumstances, Baxter cannot demonstrate a reasonable probability that a double-counting objection would have altered his guidelines sentencing range. *See Messner*, 37 F.4th at 742-45.

---

[7] Probation had initially determined that the production guideline, rather than the possession guideline, produced the higher offense level. [GSA.9-10].

### D. Any Error In The District Court's Explanation For The Obstruction-Of-Justice Enhancement Was Harmless

Baxter lastly challenges the district court's application of a two-level adjustment under USSG § 3C1.1 for obstructing justice with perjurious trial testimony. [Br.60-62]. Focusing on the requirement that "the district judge, not the jury," find that "the false testimony was willful and material," *United States v. O'Brien*, 435 F.3d 36, 41 (1st Cir. 2006) (citing *United States v. Dunnigan*, 507 U.S. 94, 95 (1993)), Baxter correctly argues that the court's statement at sentencing that his testimony "was found to be false by the jury" [JA.559] is alone insufficient to justify the enhancement. But Baxter did not register his concern with the district court at a time when the deficient factfinding could be corrected, and a remand for the court to state the obvious would change nothing.

Baxter's objection to the PSR's application of the obstruction enhancement set forth the *Dunnigan* requirement that the district court make findings as to the elements of perjury and argued that his trial testimony did not satisfy them. [PSR, Def's Obj. #1; *see also* JA.536-37]. When at sentencing the district court referenced only the jury's finding of guilt, however, he did not alert the court to its easily remediable error. The plain-error standard—designed "to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion," *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)—should therefore apply. *See United States v. Katzin*, 707 F. App'x 116, 123 (3d Cir. 2017) (unpublished). *Cf.*

*United States v. McCullock*, 991 F.3d 313, 318 (1st Cir. 2021) (applying plain error to claim of inadequate explanation for special conditions where, "had [defendant] protested, the judge could have cured any problem then and there—thus avoiding the need for an appeal").

Ultimately, though, the result is the same no matter the standard. As the PSR set forth, Baxter testified that he (1) did not know there was child pornography on his external hard drive [JA.407, 426, 432-33]; (2) had never used Freenet [JA.424, 427, 429]; (3) did not take any pornographic photographs of A.F. [JA.422, 439-40]; and (4) did not intentionally take pornographic videos of her [JA.423, 440-41]. [PSR ¶¶28, Resp. to Def's Obj. #1]. As the district court tacitly recognized, "the elements of falsity and materiality" as to this testimony "were implicit in the jury's guilty verdict[s]." *United States v. Gray*, 942 F.3d 627, 633 (3d Cir. 2019); *see also United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996) ("[A] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." (quoting *United States v. Weston*, 960 F.2d 212, 218 (1st Cir. 1992)). The jury could not have convicted Baxter of knowingly possessing child pornography, knowingly receiving child pornography, and sexually exploiting A.F. without concluding, respectively, that (1), (2), and (3) and/or (4) were false. *See, e.g., Nagell*, 911 F.3d at 31 (testimony attempting to negate an element of a crime is material).

Moreover, Baxter's testimony on these points—consisting of repeated denials of elemental facts—could hardly be characterized as the result of "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. And, tellingly, he never suggested that it could. [*See* PSR, Def's Obj. #1 (arguing only as to falsity); JA.536-37 (falsity and materiality)]. The lack of a more explicit finding on intent, though regrettable, does not justify remanding for resentencing in this case. *See, e.g.*, *United States v. Shehadeh*, 127 F.4th 1058, 1065-66 (7th Cir. 2025); *United States v. Stoner*, 466 F. App'x 720, 730-31 (10th Cir. 2012) (unpublished).

## CONCLUSION

For these reasons, the government respectfully requests that the Court affirm the judgment.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ *Alexia R. De Vincentis*
Alexia R. De Vincentis
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE WITH
## Rule 32(a)

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,292 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

/s/ *Alexia R. De Vincentis*
Alexia R. De Vincentis
Assistant U.S. Attorney

Dated: June 4, 2025

## **CERTIFICATE OF SERVICE**

I, Alexia R. De Vincentis, Assistant U.S. Attorney, hereby certify that on June 4, 2025, I electronically served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Michael Pabian, Esq.
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116

/s/ *Alexia R. De Vincentis*
ALEXIA R. DE VINCENTIS
Assistant U.S. Attorney