**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

**No. 25-1056**

---

**UNITED STATES OF AMERICA,**
**Appellee**

*v.*

**PATRICK BAXTER,**
**Defendant - Appellant**

---

**On Appeal from a Judgment of the United States District Court**
**for the District of Massachusetts**

---

# REPLY BRIEF OF APPELLANT PATRICK BAXTER

---

**Michael Pabian**
**20 Park Plaza, Suite 1000**
**Boston, Massachusetts 02116**
**(617) 227-3700 (Telephone)**
**(617) 338-9538 (Fax)**
**pabianlaw38@gmail.com**

## TABLE OF CONTENTS


INTRODUCTION……………………………………………………………………1

ARGUMENT………………………………………………………………….....2

I. INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION FOR PRODUCTION OF CHILD PORNOGRAPHY…………………………….....2

A. Insufficient Evidence of "Sexually *Explicit* Conduct"……………......2

1. *At least the videos and bathroom photographs were insufficient to support conviction*…………………………………………..2

2. *The risk of conviction on an improper basis requires that Baxter's conviction be vacated*……………………………….....5

3. *None of the images were sufficient to support conviction*……..8

B. Insufficient Evidence that Baxter "Used" a Minor………………….11

C. Section 2251(a) is Unconstitutional as-Applied…………………….11

II. INADMISSIBLE EVIDENCE THAT PREJUDICED BAXTER…………13

A. Testimony Reflecting Investigators' Collective Knowledge………..13

B. Hearsay Offered to Satisfy Jurisdictional Elements………………...22

C. Other Inadmissible Testimony………………………………………25

III. ERRONEOUS DENIAL OF SUPPRESSION MOTION………………….27

IV. SENTENCING ERROR…………………………………………………...28

A. "Pattern of" §2251(a) Violations……………………………………28

B. Duplicative Vulnerable Victim Enhancement……………………….28

C. Obstruction Enhancement Unsupported by Requisite Findings…….29

CONCLUSION…………………………………………………………...31

## TABLE OF AUTHORITIES

**Cases**

*Black v. United States*, 561 U.S. 465 (2010) ....................5

*Griffin v. United States*, 502 U.S. 46 (1991)....................7

*Mullane v. U.S. Dep't of Justice*, 113 F.4th 123 (1st Cir. 2024)....................10

*Musacchio v. United States*, 577 U.S. 237 (2016)....................11

*Ortiz-Graulau v. United States*, 756 F.3d 12 (1st Cir. 2014) ....................11

*United States v. Amirault*, 173 F.3d 28 (1st Cir. 1999) .................... 3, 7, 10

*United States v. Bazuaye*, 559 F. App'x 709 (10th Cir. 2014) (unpublished)... 30-31

*United States v. Benitez-Avila*, 570 F.3d 364 (1st Cir. 2009).................... 13-14

*United States v. Boggi*, 74 F.3d 470 (3d Cir. 1996)....................30

*United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019)....................19

*United States v. Canty*, 37 F.4th 775 (1st Cir. 2022)....................25

*United States v. Condron*, 98 F.4th 1 (1st Cir. 2024)....................23

*United States v. Deason*, 965 F.3d 1252 (11th Cir. 2020)....................26

*United States v. Dennis*, 132 F.4th 214 (2d Cir. 2025)....................12

*United States v. Deritis*, 137 F.4th 209 (4th Cir. 2025)....................10

*United States v. Dubon-Otero*, 292 F.3d 1 (1st Cir. 2002)....................6, 8

*United States v. Etienne*, 772 F.3d 907 (1st Cir. 2014) .................... 21, 22, 24, 25

*United States v. Facteau*, 89 F.4th 1 (1st Cir. 2023) ........................................ 10-11

*United States v. Frabizio*, 459 F.3d 80 (1st Cir. 2006).................................. 3, 9, 10

*United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024) .................................... 6-7

*United States v. Gray*, 942 F.3d 627 (3d Cir. 2019)……………………………30

*United States v. Hill*, 700 F. App'x 235 (4th Cir. 2017) (unpublished) ..................12

*United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022) ................................... 7, 9-11

*United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016)...................................4, 9

*United States v. Katzin*, 707 F. App'x 116 (3d Cir. 2017) (unpublished)………...30

*United States v. Langston*, 110 F.4th 408 (1st Cir. 2024)………………………...12

*United States v. Mateo*, 205 F.3d 1326 (2d Cir. 2000) (unpublished)…………….30

*United States v. McCoy*, 108 F.4th 639 (8th Cir. 2024)…………………………..11

*United States v. McCullock*, 991 F.3d 313 (1st Cir. 2021)………………………..30

*United States v. Miller*, 527 F.3d 54 (3d Cir. 2008)………………………………19

*United States v. Miller*, 829 F.3d 519 (7th Cir. 2016) .........................................3, 4

*United States v. Mooney*, 135 F.4th 486 (6th Cir. 2025)………………………….30

*United States v. Morales-de Jesus*, 372 F.3d 6 (1st Cir. 2004) ......................... 11-13

*United States v. Neal*, 36 F.3d 1190 (1st Cir. 1994)………………………………21

*United States v. Nieto*, 60 F.3d 1464 (10th Cir. 1995)………………………...24-25

*United States v. Nieves-Burgos*, 62 F.3d 431 (1st Cir. 1995)……………………7

*United States v. Orlandella*, 96 F.4th 71 (1st Cir. 2024)..........................................2

*United States v. Ortiz-Mercado*, 919 F.3d 686 (1st Cir. 2019)…………………...28

*United States v. Pabon*, 819 F.3d 26 (1st Cir. 2016)………………………………8

*United States v. Pires*, 138 F.4th 649 (1st Cir. 2025)…………………………11, 20

*United States v. Poulin*, 631 F.3d 17 (1st Cir. 2011)……………………………...13

*United States v. Pullman*, 139 F.4th 35 (1st Cir. 2025)…………………………5-6

*United States v. Ramos*, 739 F.3d 250 (5th Cir. 2014) ..........................................29

*United States v. Rathbun*, 98 F.4th 40 (1st Cir. 2024)…………………………....8

*United States v. Sauza-Martinez*, 217 F.3d 754 (9th Cir. 2000)…………………..17

*United States v. Seekins*, No. 21-10556, 2022 WL 3644185 (5th Cir. Aug. 24, 2022) (unpublished)..........................................................................................12

*United States v. Silva*, 794 F.3d 173 (1st Cir. 2015) ........................................... 8-9

*United States v. Spinner*, 152 F.3d 950 (D.C. Cir. 1998)…………………………17

*United States v. Vallier*, 711 F. App'x 786 (6th Cir. 2018) (unpublished) ...............4

*United States v. Vazquez-Rivera*, 665 F.3d 351 (1st Cir. 2011) ...................... *passim*

*United States v. Woods*, 321 F.3d 361 (3d Cir. 2003)……………………………24

*United States v. Zavala*, 338 F. App'x 92 (2d Cir. 2009) (unpublished)…………30

*Yates v. United States*, 354 U.S. 298 (1957)..................................................... 5-6, 8

**Statutes**

18 U.S.C. §2251(a) ....................................................................................4, 28

18 U.S.C. §2256(2)(A)......................................................................................2

### Note on Citations to the Record

Material contained in the Appendix is cited in the Brief as "App:_____." Material in the Sealed Appendix is cited in the Brief as "SA:___." Baxter's opening Brief is cited as "Def.Br.____," and the government's Brief is cited as "Govt.Br.________." District court docket entries are cited as "Doc. _______."

## INTRODUCTION

Baxter is serving a 20-year sentence arising from a trial that the government does not dispute was tainted by multiple evidentiary errors. The errors were not peripheral, but instead implicated key offense elements. And the government repeatedly touted the inadmissible evidence in arguing that the jury should convict Baxter. Ignoring its prior extensive reliance upon the clearly inadmissible evidence, the government now contends that the errors were not prejudicial largely because of the mere fact that child pornography was found on Baxter's device. The Court should reject the government's contention, which is not supported by authority, improperly assumes away the statutory requirement of knowledge, and disregards the possibility that child pornography may be downloaded unintentionally.

Baxter's conviction for producing images of "sexually explicit conduct" is independently infirm because it is based on images of a nude child playing, which do not depict any sexual conduct whatsoever. In denying Baxter's Rule 29 motion, the district court relied in part, at the government's express invitation, on Baxter's alleged subjective intent to find that the images themselves were sexually explicit. This bootstrapping of a defendant's intent is contrary to this Court's caselaw, and

the government does not contend otherwise on appeal.

## ARGUMENT

### I. INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION FOR PRODUCTION OF CHILD PORNOGRAPHY

#### A. Insufficient Evidence of "Sexually *Explicit* Conduct"

##### 1. *At least the videos and bathroom photographs were insufficient to support conviction*

The two videos taken in a bedroom, submitted to the jury as possible bases for conviction on Count 3, depict a nude child playing, without more. In the first video, Ex.25.1,[1] while Baxter's [redacted]'s genitals are visible when she rolls on the bed, they are not "lascivious[ly] exhibit[ed]." 18 U.S.C. §2256(2)(A)(v). There is no evidence that Baxter did anything to prompt his [redacted]'s behavior, which was instead the natural act of a playful child. Baxter's [redacted] did look at the camera, but again in a natural, child-like manner. The government's primary authority is inapposite to these circumstances. *See United States v. Orlandella*, 96 F.4th 71, 86 (1st Cir. 2024) (images underlying conviction "involved the repeated insertion of a hairbrush into a pubescent female's vagina and the digital manipulation of a pubescent female's labia and vagina"). The second video, Ex.25.3, even more

[1] The images underlying Count 3 are available on a thumb drive in the government's sealed supplemental appendix.

clearly fails to satisfy the statutory definition. Baxter's [redacted]'s genitals are not visible. Her pubic area is barely visible and certainly not the focal point. For much of the video, Baxter's [redacted]'s legs are crossed, covering her pubic area.

The government does not dispute that, in assessing whether an image is lascivious, the Court must focus "on the objective criteria of the [image]'s design," not the creator's subjective intent. Def.Br.31-32 (quoting *United States v. Amirault*, 173 F.3d 28, 34-35 (1st Cir. 1999)); Govt.Br.26 & n.3.[2] Notwithstanding that fact, the government repeatedly relies upon out-of-circuit authority expressly basing a finding of lasciviousness on the defendant's subjective intent. *E.g.*, Govt.Br.24 (citing *United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016)). These out-of-circuit cases are contrary to binding precedent. Def.Br.32-33.

A similar analysis applies to the two bathroom photographs. The government's argument that the "bathroom setting" could be found to be "sexually

[2] While the Court has left open whether, in certain circumstances, it may be appropriate to "look beyond the four corners of an image," Govt.Br.26 n.3 (citing *United States v. Frabizio*, 459 F.3d 80, 89-90 & n.15 (1st Cir. 2006)), that openness relates to issues not pertinent here. *See Frabizio*, 459 F.3d at 90 n.16 (referring to "testimony that a child was exploited in the process of creating an image" as potentially "objective evidence" of lasciviousness). The Court has, by contrast, repeatedly "expressed doubt" that "the subjective intent of the producer" should be considered. *Id.* at 89 n.15.

suggestive" overlooks the presence of the minor's father. Govt.Br.26, 10. The government also incorrectly asserts that "the district court did not purport to rely on [Baxter's alleged] subjective intent in reasoning that the jury could find the bathroom images lascivious." Govt.Br.26 n.3. The only authority cited by the district court on this issue was *United States v. Vallier*, 711 F. App'x 786, 788 (6th Cir. 2018) (unpublished), for the proposition that "[c]ourts have repeatedly upheld convictions under § 2251(a) where the defendant, ***with lascivious intent***, secretly videoed minors engaged in otherwise innocent activities.…" Add.34 n.3 (emphasis added). *Vallier* cited the same line of authority focusing on the defendant's subjective intent that Baxter contends (and the government does not dispute) conflicts with the law of this circuit. *See* 711 F. App'x at 788 (citing, *inter alia*, *Miller*, 829 F.3d at 524-26; *United States v. Holmes*, 814 F.3d 1246, 1251-52 (11th Cir. 2016)). The district court's reliance upon this reasoning should not have come as a surprise to the government. The government expressly argued, in opposing Baxter's Rule 29 motion, "[a] reasonable factfinder could…have considered defendant's demonstrated attraction to children in evaluating the pornographic nature of the images.…" Doc. 138 at 7. The government no longer defends this position.

2. *The risk of conviction on an improper basis requires that Baxter's conviction be vacated*

The government's position that Baxter's "*Yates* claim[]" is unpreserved, Govt.Br.27, is contrary to Supreme Court precedent. In *Black v. United States*, 561 U.S. 465, 469 (2010), defendants affirmatively opposed the government's request for a special verdict. The government argued on appeal that this position "resulted in forfeiture not of their [underlying] jury-instruction objection, but of their '*Yates* argument' that any instructional error may 'requir[e] reversal.'" *Id.* at 473 n.12 (citation omitted). The Court found "little merit in the Government's attempt to divorce preservation of a claim from preservation of the right to redress should the claim succeed." *Id.* So too here. The government agrees that Baxter preserved his Rule 29 motion. Govt.Br.19. Thus, if the Court agrees that one or more images underlying Count 3 was insufficient to support conviction, it must determine whether, under *Yates*, that insufficiency requires the conviction to be vacated.

The sole authority cited by the government on this issue, *United States v. Pullman*, 139 F.4th 35 (1st Cir. 2025), is in accord. There, this Court addressed defendants' *Yates* argument regarding the district court's fiduciary-duty instructions without questioning preservation (finding any error harmless), *id.* at 46-47, despite the fact that defendants did not raise *Yates* below. *See United States*

*v. Pullman*, No. 23-1508 (1st Cir.), Govt.Br.59-60. The Court found a second *Yates* argument by one defendant unpreserved where the defendant failed to raise the underlying error (a claim that the erroneous instructions on wire fraud spilled over to a separate obstruction charge) in district court. *See* 139 F.4th at 54; *United States v. Pullman*, No. 23-1508 (1st Cir.), Govt.Br.64-65. Here, by contrast, Baxter undisputedly preserved his underlying evidentiary-sufficiency claim, which, under binding precedent, preserved his current *Yates* argument.

This Court and others have applied "*Yates* to arguments (like the present one) that the defendant's alleged conduct did not satisfy the statute of conviction." Def.Br.37. The government is wrong in contending that the cases cited by Baxter were predicated upon claims of instructional error. This Court's discussion of *Yates* in *United States v. Dubon-Otero*, 292 F.3d 1, 6 (1st Cir. 2002), occurred in the express context of an evidentiary-sufficiency claim. The Court rejected that claim on the merits, *id.* at 8, before going on to separately reject claims of instructional error, *id.* at 14-16. *United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024), involved no claim of instructional error. Rather, the issue was one of evidentiary sufficiency. "[A]fter the jury returned its verdict, the district court ruled one of the charged statements could not support a conviction" for

immigration fraud because it was "literally true." *Id.* at 192 (citation omitted). The Fourth Circuit found that this constituted "legal error" within the meaning of *Griffin v. United States*, 502 U.S. 46, 59 (1991). It observed, "[n]o amount of proof…could have changed that [defendants] were legally married when they submitted the Form.… The problem was not missing information; it was a defective charge." *Gallagher*, 90 F.4th at 193.

So too here. Whether an image is lascivious and therefore may support conviction depends "on the objective criteria of the [image]'s design." *Amirault*, 173 F.3d at 34-35. Baxter contends that the government erroneously predicated Count 3 on images that "fail[] to come within the statutory definition…." *United States v. Hillie*, 39 F.4th 674, 680 (D.C. Cir. 2022) (quoting *Griffin*). No amount of other evidence could have changed "the objective criteria" of the images dictating that result. The government's sole authority to the contrary involved a pure issue of factual sufficiency. *United States v. Nieves-Burgos*, 62 F.3d 431, 436 (1st Cir. 1995).

The government, notably, does not claim that, if the Court finds this issue preserved, it can prove the error harmless beyond a reasonable doubt. Def.Br.36 n.11. Assuming *arguendo* the Court finds the issue unpreserved, the defense

submits that failure to apply *Yates* to a claim that the defendant's alleged conduct did not satisfy the charging statute was clear and obvious error under *Dubon-Otero* and the persuasive authority cited by Baxter, amounting to plain error. Baxter has not waived this argument by failing to anticipate the government's contention that, notwithstanding his preserved evidentiary-sufficiency claim, his failure to specifically raise *Yates* in district court amounted to forfeiture. *Cf. United States v. Rathbun*, 98 F.4th 40, 57-58 (1st Cir. 2024) (no plain-error argument in opening or reply briefs); *United States v. Pabon*, 819 F.3d 26, 33-34 (1st Cir. 2016) (same).

3. *None of the images were sufficient to support conviction*

Baxter has not "concede[d] the sufficiency of the evidence for the jury to find the bedroom photographs lascivious." Govt.Br.29. To the contrary, his opening brief argued at-length that "[n]one of the images underlying the production charge depicted 'sexually ***explicit*** conduct,' as required by statute." Def.Br.20, 23-29. Baxter noted that "this argument is in tension with the law of this circuit." Def.Br.27. The government, however, overstates precedent when it claims Baxter's argument is "foreclosed." Govt.Br.20.

The two decisions of this Court cited by the government are distinguishable. *United States v. Silva*, 794 F.3d 173, 181-82 (1st Cir. 2015), involved

"approximately twenty three hours of footage," with each film including scenes "that gave the camera a clear shot of [minors'] genitalia." This is a far cry from two videos spanning 6 and 15 seconds, respectively, and eighteen photographs, of a nude child playing. *Frabizio*, 459 F.3d at 86, involved photographs of nude minors with "no ready explanation that makes the nudity indisputably innocent." "[E]ach of the girls' legs [we]re parted and the pubic area [wa]s plainly visible.… A jury could reasonably conclude that none of the girls' postures were natural or spontaneous, that each girl was deliberately posed to exhibit her pubic area…." *Id.* Here, by contrast, there was no evidence that Baxter's [redacted]'s conduct was anything but "spontaneous." Baxter did not direct her to pose or prompt her behavior in any fashion. The only other authority cited by the government is, again, caselaw that, contrary to the law of this circuit, relied upon the defendant's subjective intent to find images lascivious. Govt.Br.21 (citing *Holmes*, 814 F.3d at 1252).

The government undertakes no meaningful effort to respond to the defense argument, based on statutory text, Supreme Court precedent, and legislative history, that the statutory requirement of "sexually explicit conduct" must entail some connotation "that the minor…exhibits sexual desire or an inclination to

engage in *any* type of sexual activity." Def.Br.23-29 (quoting *Hillie*, 39 F.4th at 685); *see also Amirault*, 173 F.3d at 33-34 (noting there was "nothing particularly sexually suggestive in the girl's expression or pose"). Contrary to the government's suggestion, this contention is not predicated upon any requirement that the minor ***actually*** experience sexual desire. Govt.Br.20-21. Rather, for example, in *Frabizio*, the minors were posed in a manner that arguably connoted willingness to engage in sexual activity, though the minors themselves presumably harbored no such desire. 459 F.3d at 86.

Assuming *arguendo* the law-of-the-circuit doctrine applies, the Court may re-examine its precedents in light of the D.C. Circuit's 2022 opinion in *Hillie*.[3] *See Mullane v. U.S. Dep't of Justice*, 113 F.4th 123, 132 (1st Cir. 2024). Alternatively, to the extent the Court believes consideration of this issue is foreclosed, Baxter preserves it for *en banc* review.

The government incorrectly suggests that Baxter did not preserve this argument below. Govt.Br.20. But "[a] Rule 29 motion raising a general challenge to the adequacy of the evidence," which Baxter made, "preserves for de novo review ***the full range of challenges, whether stated or unstated***." Def.Br.41

[3] Other circuits have declined to follow *Hillie*. *See, e.g.*, *United States v. Deritis*, 137 F.4th 209, 219-20 (4th Cir. 2025).

(quoting *United States v. Facteau*, 89 F.4th 1, 39 n.26 (1st Cir. 2023)) (emphasis added).[4]

**B. Insufficient Evidence that Baxter "Used" a Minor**

The government fails to meaningfully engage with Baxter's argument on this point. Def.Br.39-40. The sole circuit precedent it cites is factually distinguishable. *See Ortiz-Graulau v. United States*, 756 F.3d 12, 22 (1st Cir. 2014) (involving "repeated vaginal and oral intercourse" with minor).

**C. Section 2251(a) is Unconstitutional as-Applied**

Again, a general Rule 29 motion "preserves for de novo review the full range of challenges." *Facteau*, 89 F.4th at 39 n.26. Baxter's constitutional challenge is predicated upon facts adduced at trial, including "the age of the minor, the relationship between the defendant and the minor, the nature of the allegedly sexually explicit conduct, and the nature of the visual depiction of that conduct." *United States v. Morales-de Jesus*, 372 F.3d 6, 18 (1st Cir. 2004). It is, for that

[4] *United States v. McCoy*, 108 F.4th 639, 645 (8th Cir. 2024), held that "[a] defendant may not recharacterize a challenge to a jury instruction as a sufficiency-of-the-evidence claim to avoid forfeiture." But Baxter, unlike the defendant there, has raised no claim of instructional error. Moreover, the law is clear in this circuit that evidentiary sufficiency is evaluated "against the statutory elements, not the jury instructions." *United States v. Pires*, 138 F.4th 649, 658 n.4 (1st Cir. 2025); *see also Hillie*, 39 F.4th at 679 (citing *Musacchio v. United States*, 577 U.S. 237, 243 (2016)).

reason, squarely encompassed by his Rule 29 motion. *See United States v. Dennis*, 132 F.4th 214, 227 (2d Cir. 2025); *United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (argument that evidence was insufficient to satisfy "interstate commerce element");[5] *United States v. Hill*, 700 F. App'x 235, 237 n.3 (4th Cir. 2017) (unpublished) ("Whether the government presents facts within the constitutional limitations of Congress' commerce power can only be answered after a proper factual context is established, e.g., at trial…."). This is supported by the fact that this Court in *Morales-de Jesus* appears to have assumed that a similar constitutional challenge was preserved from the mere fact of the defendant's motion for judgment of acquittal. *See* 372 F.3d at 8. The only contrary authority cited by the government involved no comparable fact-intensive challenge. *See United States v. Langston*, 110 F.4th 408, 417 (1st Cir. 2024) (argument that felon-in-possession statute "cannot, consistent with the Second Amendment, prohibit someone with previous convictions under Maine law for theft and drug trafficking from ever owning a firearm again.").

[5] The government incorrectly asserts that *Seekins* did not "address[] the question of preservation." Govt.Br.31. The court expressly relied on the rule that "[w]here…a defendant preserved a general sufficiency-of-the-evidence challenge…, we review de novo…." 2022 WL 3644185, at *1.

On the merits, the sole case relied on by the government is far-afield. *United States v. Poulin*, 631 F.3d 17, 18-19 (1st Cir. 2011), involved the defendant's approximately seven-year scheme to "surreptitiously videotape[]" his girlfriend's minor daughter. The defendant, a Maine resident, purchased "various forms of covert camera equipment" from a business in Texas. *Id.* at 19. "In total, authorities retrieved approximately forty-eight DVDs," containing "several hundred hours" of footage, "ninety-five percent of [which] were depictions of" the minor "in various stages of undress." *Id.* at 20.

The present case, by contrast, involves two videos (totaling 21 seconds) and eighteen photographs, taken during a single family visit, within a single family residence. The defendant in *Poulin*, unlike Baxter, did "not even attempt to apply" the *Morales-de Jesus* factors. 631 F.3d at 21; Def.Br.42-43.

## II. INADMISSIBLE EVIDENCE THAT PREJUDICED BAXTER

### A. Testimony Reflecting Investigators' Collective Knowledge

The government, to its credit, expressly "concedes" that FBI Agent Bryce Montoya, its first trial witness, provided testimony "implicat[ing] concerns" that have led this Court to find evidentiary error in prior cases. Govt.Br.33 (citing *United States v. Vazquez-Rivera*, 665 F.3d 351 (1st Cir. 2011); *United States v.*

*Benitez-Avila*, 570 F.3d 364 (1st Cir. 2009)). In fact, the government does not dispute that admission of Montoya's testimony was a clear and obvious error that "satisfies the first two prongs of plain error." Govt.Br.33.

At trial, after Montoya testified that he became involved in the case when he "received a lead from an FBI headquarters unit," the government asked, "[w]hat was the nature of the lead?" App:207. Montoya then provided the concededly inadmissible testimony at issue: "[t]he lead stated that a specific IP address [belonging to Baxter] was attempting to download child pornography." App:207. The government represents on appeal that it "had planned to call the FBI agent who observed the Freenet requests to testify…and failed to appropriately recalibrate its presentation of evidence and argument when it did not." Govt.Br.33 n.4. Respectfully, that is no excuse for offering clearly inadmissible evidence against a criminal defendant facing a statutory sentencing range of 15 to 70 years.

The government's argument that Baxter was not prejudiced by this clear error entirely overlooks the manner in which the government used Montoya's inadmissible testimony. On just the second page of its cross-examination of Baxter, the government challenged his testimony that he had "never been on Freenet" by asking, "you are aware that the [FBI]…observed that someone in your

home on three separate occasions had logged in or appeared to have logged into Freenet. You understand that, don't you?" App:429-30. When Baxter answered affirmatively, the government added, "[a]nd you understand that those dates were quite varied. They were June 4, 2021, July 2, 2021, and August 10, 2021." App:430. When Baxter said he "had not heard the August 10 date before," the government followed-up, "[b]ut you understand the FBI had observed someone at your house logging into Freenet on various dates." App:430. When Baxter agreed, the government asked, "[a]nd you're telling us that wasn't you?… Then who was it?" App:430. Baxter said he did not know, but the government continued to press: "[w]ell, do you have somebody living in the cellar that we don't know about?" App:430. Ultimately, Baxter agreed that he was "aware that the individual on those dates was attempting to download specific known child pornography" and "that some of that specific known child pornography that was attempting to be downloaded in [his] house on those dates was found in the collection of child pornography on the" Samsung solid state drive ("SSD"). App:430-31. The government does not attempt to defend this line of questioning, presenting Baxter with hearsay information from a non-testifying agent that he could only have been aware of through participation in the criminal case.

Def.Br.45-46. Nor does the government acknowledge the significant and unfair undermining of Baxter's credibility as a witness, a key issue in his trial, that resulted.

Later that day, in closing argument, the government expressly advocated for the jury to convict Baxter based, in part, on Montoya's concededly improper testimony: "[t]he FBI was able to…determine that the users of a computer at…the defendant's house…attempted to download child pornography from Freenet on more than one occasion. In fact, I think you know now it was on three very disparate and different dates that an individual in the defendant's house was on Freenet attempting to download child pornography." App:469. Again, the government explicitly used the inadmissible testimony to unfairly attack Baxter's credibility: "[t]he defendant claims he had never heard of Freenet. He claims that he was not on Freenet on all those multiple occasions, he was not on Freenet on those dates that the FBI noticed somebody at that residence. So who was it? Well, you know who it was. It was the defendant. Who else could it be?" App:469. The government later called on jurors to "[r]emember the FBI tip. Somebody's in the house. Somebody's accessing Freenet. Somebody you know now as the defendant is downloading child pornography from Freenet." App:474.

Having relied so extensively on the improper testimony, the government is poorly situated to now contend that the error was not prejudicial. *See United States v. Sauza-Martinez*, 217 F.3d 754, 761 (9th Cir. 2000); *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998). The government's argument suffers from additional flaws as well. First, it relies upon other evidence that Baxter claims was inadmissible and with respect to which the government has presented no counter-argument. Govt.Br.33-34 (citing testimony that "the backup account on the SSD contained internet search history related to Freenet, listed Freenet as a favorited bookmark, included Freenet installation instructions, [and] contained hundreds of messages from Freenet's messaging board system"); Def.Br.50-51; *infra* pages 25-26. Because whether the defendant was prejudiced by clear evidentiary errors depends upon the cumulative effect of the inadmissible evidence, *see Vazquez-Rivera*, 665 F.3d at 363-64, one piece of inadmissible testimony cannot cure the prejudice from another. Second, the evidence (including Baxter's testimony) connecting him to the SSD did not necessarily connect him to the unlawful contents of that device. Baxter denied ever having accessed those contents, App:399, and none of the evidence cited by the government is inconsistent with his use of the SSD to back-up legitimate files.

The government's argument regarding lack of prejudice thus boils down to the fact that the "Freenet/downloads" folder on the SSD was found to contain "over 90 child pornography files." Govt.Br.34. But there was no direct evidence as to how those files got there, much less that Baxter was responsible. And there were reasons to doubt the government theory. No child pornography, or evidence that any such material had been deleted, was recovered from the laptop that the government contended was used to transfer the files to the SSD. Govt.Br.11; App:471 (government arguing that "[t]he contents of the laptop had been transferred…to the SSD"). There was, moreover, a wealth of evidence that all relevant devices were maintained openly in Baxter's family home, with no attempt whatsoever at secrecy. Def.Br.9-10, 14. The SSD was, at the time of the search, "found on an end table" in Baxter's living room. Govt.Br.7.

The mere presence of child pornography on an electronic device, in the circumstances of this case, does not provide such overwhelming evidence of ***knowing*** receipt and possession of such material as to render any evidentiary error non-prejudicial. As this Court has explained, "[b]ecause much of the transgressive acts [child-pornography] investigations target are carried out in private while the offender sits at a computer terminal, even when agents are able to zero in on a

suspect—*e.g.,* by matching…an IP address with an account holder's residential…address—it may not always be clear that he…is actually responsible for the conduct that agents observed on their screens." *Vazquez-Rivera*, 665 F.3d at 363. It is, unfortunately, possible for child pornography to be unintentionally downloaded onto a person's device. *See United States v. Bosyk*, 933 F.3d 319, 363 (4th Cir. 2019) (Wynn, J., dissenting) ("When you click a link in an email or a pop up advertisement in your browser, you may inadvertently download one of these viruses, which can then visit child pornography websites and download files onto your hard drive" (quoting Robert Siciliano, *Why is Child Pornography on Your PC?*, HuffPost (Dec. 6, 2017))); *id.* (referencing "an Associated Press investigation into numerous cases in which child pornography was placed on a computer through a virus, including one computer that was 'programmed to visit as many as 40 child porn sites per minute'" (quoting *Viruses Frame PC Owners for Child Porn*, CBS News (Nov. 9, 2009))); *United States v. Miller*, 527 F.3d 54, 63 (3d Cir. 2008) (reflecting statement by "former head of [DOJ's] computer crimes unit…with respect to defense in British case that virus downloaded child pornography, '[t]he scary thing is that the defense might be right'" (quoting John

Schwartz, *Acquitted Man Says Virus Put Pornography on Computer*, N.Y. Times (Aug. 11, 2003))).

The language employed by Montoya, and oft-repeated by the government, "attempting to download child pornography," entailed a level of action and intentionality otherwise entirely absent from the government's case. There is at least a reasonable probability that, alone or in combination with the other evidentiary errors, Montoya's inadmissible testimony on this issue affected the verdict.[6]

The defense also maintains that Montoya's testimony that "specifically to obtain child pornography files, [Freenet] users have to identify a key for that file" was inadmissible. App:208. The government laid no foundation whatsoever for Montoya's personal knowledge regarding Freenet. In defending the admissibility of the testimony, the government relies solely on Montoya's statement on ***cross***-examination, "I have observed Freenet in my training…." App:248. This testimony was not specifically tied to Montoya's knowledge of Freenet keys.

[6] The record here, unlike in *Pires*, does not support any inference that Baxter's non-objection to the evidence challenged on appeal was "part of his trial strategy," and the government does not contend otherwise. 138 F.4th at 674. There was no apparent strategic reason why the defense would want the evidence (which was highly prejudicial for reasons outlined herein) admitted, and the defense did not seek to "capitalize" on it in closing argument. *Id.* at 673.

Indeed, it is difficult to imagine how Montoya could have "observed" that Freenet users must always "identify a key" to obtain a child-pornography file. *Cf. United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir. 1994) (bank employee permitted to testify regarding "FDIC status" because "her job brought her into contact with records, including certificates provided by the FDIC, which indicated that the…branch…was federally insured"). The government relies on extra-record speculation that, because it "operates Freenet nodes,…the training could very well have shown trainees, as opposed to merely told them, how Freenet works." Govt.Br.36.

The government's own authority precludes such speculative theories of admissibility. As in *United States v. Etienne*, 772 F.3d 907, 920 (1st Cir. 2014), the government indisputably "did not lay a foundation for" Montoya's testimony regarding Freenet keys. "Instead, the government offers speculation as to potential foundational testimony that [Montoya] may have offered had he been asked. Speculation is not foundation evidence, and…the government's" elicitation of Montoya's "testimony without attempting to lay a foundation was a plain and obvious error." *Id.*[7]

---

[7] The government cites a different portion of *Etienne*, dealing with "overview

### B. Hearsay Offered to Satisfy Jurisdictional Elements

The government similarly does not defend the admissibility of the sole testimony arguably supporting a finding that the SSD and Baxter's iPhone were manufactured outside Massachusetts, which the government argued satisfied the jurisdictional elements for all counts. Govt.Br.37 (contending that Court "need not address" admissibility of testimony about SSD), 38 ("Baxter is correct that Montoya's testimony failed to lay a foundation for his personal knowledge that…iPhones are manufactured outside of Massachusetts" (citation omitted)). Admission of this testimony was clear and obvious error. *See Etienne*, 772 F.3d at 920.

For Counts 1 and 2, the government claims that there was no prejudice because the alternative means of satisfying the jurisdictional element, transmission via the internet, "provides a clear path to affirmance." Govt.Br.37. But there is a reasonable probability that the jury would have found the jurisdictional element

---

testimony" (which is not at issue here). 772 F.3d at 915. The Court was satisfied that "most of" the witness's testimony "was based on his own personal knowledge." *Id.* at 916. In these circumstances, "[t]o the extent that there [wa]s any ambiguity about [the witness's] knowledge," the Court declined to find it rose to the level of plain error. *Id.* By contrast, where, as here and with respect to the other *Etienne* testimony, the government fails to offer any foundation for the witness's personal knowledge, admission of the testimony is plain error.

unsatisfied if not for Montoya's inadmissible testimony. For one thing, the government's argument to the jury on this issue did not so much as mention the internet. Certainly, the manner in which the government argued its case is pertinent to the reasonable-probability inquiry. *See supra* page 17 (citing cases).[8] Even setting aside the government trial argument, it is far from clear that the jury would have found that the images on the SSD were transmitted via the internet. The government cites Montoya's conclusory description of Freenet as "internet-based." App:208. The defense contends that testimony was inadmissible. *See supra* pages 20-21; Def.Br.47-48 & n.14. Additionally, it strains credulity to suggest that the jury would necessarily have found the jurisdictional element satisfied based on this single line in hundreds of transcript pages, never brought up again in the course of trial. And, even taking Montoya's testimony at face-value, he did not say that the actual file transfers utilized the internet. The government's

[8] *United States v. Condron*, 98 F.4th 1, 20-21 & n.27 (1st Cir. 2024), involved a challenge to the sufficiency of the trial evidence. In that context, "regardless of what the government argued to the jury, the jury was entitled to draw its own inferences and conclusions from the evidence before it." *Id.* at 21 n.27. *Condron* does not, however, support the proposition that, for purposes of plain-error analysis, the hypothetical availability of an alternative basis for conviction not argued by the government precludes a defendant from demonstrating a reasonable probability that a clear evidentiary error undermining the government's chosen theory affected the verdict.

reliance upon testimony regarding a "Freenet/downloads" folder on the SSD fares no better. The word "internet" is conspicuously absent from that testimony. App:302-07. Even assuming *arguendo* the mere label "downloads" entails internet usage, Kajita's testimony on this issue was expressly based on the file paths. He admitted on cross-examination that he could not "tell this jury that anything was downloaded from Freenet" and he had "not seen any evidence directly from Freenet that any of these items at all were downloaded from Freenet." App:322.

Count 3's jurisdictional element cannot be satisfied by internet usage. Accordingly, the government takes a different tack, positing that "it stands to reason that a seasoned FBI special agent who has investigated '[a]t least 100' child exploitation cases…very well could have had personal knowledge of" where iPhones are manufactured. Govt.Br.38. This is precisely the sort of speculation regarding foundation the government failed to lay that this Court prohibits. *See Etienne*, 772 F.3d at 920. The cases cited by the government are readily distinguishable. *See United States v. Woods*, 321 F.3d 361, 365 (3d Cir. 2003) (agent "testified that the NICB database indicated that the vehicle…was manufactured in Tarrytown, New York," satisfying Fed. R. Evid. 803(17) hearsay exception for commercial publications); *United States v. Nieto*, 60 F.3d 1464, 1467

(10th Cir. 1995) (rejecting hearsay challenge on plain-error review where "[i]t [wa]s clear from the record that much of [the witness's] testimony was based on personal observations").[9]

### C. Other Inadmissible Testimony

Once again, the government does not dispute that Montoya's testimony relaying the contents of data within the SSD violated the best evidence rule, or that such error was clear and obvious. Def.Br.50-51. Rather, the government argues that there was no prejudice because, had the inadmissible evidence been challenged, "the government would have simply put the underlying…forensic records into evidence." Govt.Br.39. The government cites no precedent of this Court for the proposition that a clear evidentiary error may be found non-prejudicial based on evidence that hypothetically could have been, but was not, offered in its stead. To the contrary, the dispositive question is the existence of "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Canty*, 37 F.4th 775, 790 (1st Cir. 2022) (citation omitted). In *Vazquez-Rivera*, for example, where this Court vacated the defendant's conviction on plain-error review because, *inter alia*, a government

[9] To the extent the Court believes this out-of-circuit authority is inconsistent with *Etienne*, it must follow its own binding precedent.

agent testified "based in large part on the overall investigation rather than her personal observations," 665 F.3d at 358, the Court did not ask whether other investigators were available to provide testimony based on personal knowledge in place of the clearly erroneous testimony offered.[10]

The government's claim that Kajita's testimony regarding the SSD password "was offered merely to show the results observed by [Kajita] when he conducted his Google search, not to prove the truth of the underlying contents of the websites," Govt.Br.40-41 (citation omitted), is belied by the record, most notably the government's extensive use of the testimony for its truth in closing argument. Def.Br.18-19 & n.4. The error was prejudicial. The evidence cited by the government established (consistent with Baxter's testimony) that he used the SSD. But it did nothing to undermine Baxter's testimony that he never accessed the contents of the device. Kajita's inadmissible testimony was improperly used to fill that gap in the government's proof and to discredit Baxter's testimony. Def.Br.18-19 & n.4.

[10] The inquiry was less speculative in *United States v. Deason*, 965 F.3d 1252, 1266 (11th Cir. 2020), where the Eleventh Circuit found no prejudice from introduction of "screenshots" depicting child pornography rather than the videos themselves. The broader reading of *Deason* advocated by the government would be inconsistent with this Court's precedents, including *Vazquez-Rivera*.

## III. ERRONEOUS DENIAL OF SUPPRESSION MOTION

The government acknowledges that Freenet requests "for pieces of suspected child pornography" may come "from either the original requestor or a peer of the original requester," innocently forwarding the request by automatic operation of the software. Govt.Br.4. The only way to tell the difference is via application of a "mathematical formula" not disclosed to the magistrate. Govt.Br.4. The "layman's explanation" relied upon by the government is little more than a request to ratify the affiant's own "conclu[sion]" that "Baxter was likely the original requestor." Govt.Br.18. Conspicuously absent from the affidavit, in addition to the mathematical formula itself, is identification of the article relied upon, its author(s), the error rate, and any explanation as to why the number of pieces requested for the files at issue was inconsistent with merely forwarding the request of another user. The government devotes a single sentence to the good-faith exception and does not attempt to address Baxter's argument that this was a deficiency of the affiant's own making, precluding a reasonable belief in the sufficiency of the warrant. Def.Br.56-57 (citing cases).

## IV. SENTENCING ERROR

### A. "Pattern of" §2251(a) Violations

The government's argument on this issue is divorced from important procedural context. The applicable enhancement was first introduced in a revised PSR issued two days before sentencing. Def.Br.58 n.19. The government faults Baxter for failing to specifically object to this enhancement (though he did object to a "virtually identical" one included in the prior PSR version) in his PSR objections and sentencing memorandum, without acknowledging that both documents were filed before the enhancement had been raised. Govt.Br.43. In these circumstances, Baxter had no "reasonable opportunity" to provide a more specific objection. *United States v. Ortiz-Mercado*, 919 F.3d 686, 689 (1st Cir. 2019). Additionally, the district court was clearly aware of Baxter's contention that the images relied upon to support the enhancement were insufficient to satisfy §2251 (which would render them insufficient to support the enhancement as well). Def.Br.58 n.19.

### B. Duplicative Vulnerable Victim Enhancement

This enhancement was first introduced, with no notice to Baxter, at the sentencing hearing. Def.Br.59. Accordingly, Baxter had no reasonable

opportunity to lodge a specific objection, and his general objection to the enhancement was sufficient to preserve the issue. Def.Br.59. Baxter's [redacted] was an alleged victim underlying both the possession and the production charges, as images of her were contained within the SSD when it was seized. App:45. Thus, her age was reflected in the §2G2.2(b)(2) enhancement. The guidelines do not permit application of separate enhancements for every minor depicted in pornographic materials possessed by a defendant. *See United States v. Ramos*, 739 F.3d 250, 251 (5th Cir. 2014) (involving "twelve videos"). In fact, a separate 5-level enhancement was applied to Baxter for the number of images. SA:503. There is, contrary to the government's suggestion, no indication that the district court would have imposed the same enhancement based on the familial relationship between Baxter and his [redacted]. Govt.Br.47-48. As the defense noted in its objections to a prior PSR version, "[redacted]" SA:524.

**C. Obstruction Enhancement Unsupported by Requisite Findings**

Baxter clearly and expressly objected to this enhancement, including in

specific reference to the findings required to support it. SA:522. The government concedes that Baxter was "correct[]," and the findings subsequently made by the district court were "insufficient." Govt.Br.49. The government nonetheless contends that the conceded error is unpreserved because the defense did not object a second time after the court imposed the enhancement. This is incorrect. *See United States v. Mooney*, 135 F.4th 486, 501 (6th Cir. 2025); *United States v. Zavala*, 338 F. App'x 92, 94 (2d Cir. 2009) (unpublished); *United States v. Mateo*, 205 F.3d 1326, at *2 n.1 (2d Cir. 2000) (unpublished).[11] The government's contention that the record would have supported findings that the district court undisputedly failed to make is not a basis "to affirm the court's application of the enhancement." *Mooney*, 135 F.4th at 502; *see also, e.g.*, *United States v. Bazuaye*,

[11] *United States v. McCullock*, 991 F.3d 313, 318 (1st Cir. 2021), involved a challenge to supervised-release conditions. The Court held that an "objection to the substantive constraints imposed" did "nothing to preserve a claim that the judge did not sufficiently explain the reasons for imposing them." *Id.* Here, by contrast, the defense objection specifically raised and outlined the required findings that the district court failed to make. Other cases cited by the government involved findings by the district court beyond the mere fact of the jury's guilty verdict. *See United States v. Katzin*, 707 F. App'x 116, 123 (3d Cir. 2017) (unpublished) (district court stated that defendant's testimony was "clearly not believable"); *United States v. Gray*, 942 F.3d 627, 634 (3d Cir. 2019) (district court "expressly f[ound] that [defendant's] false testimony was willfully given"); *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) ("The district court found that [defendant] perjured himself at trial. . . .").

559 F. App'x 709, 716-17 (10th Cir. 2014) (unpublished).

## CONCLUSION

For the foregoing reasons, and those set forth in his opening brief, Baxter's conviction for production of child pornography should be reversed, and his remaining convictions should be vacated.

Respectfully submitted,
Patrick Baxter
By his Attorney,

**/s/ Michael Pabian**
Michael Pabian
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (Telephone)
(617) 338-9538 (Fax)
pabianlaw38@gmail.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,485 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14-point font.

**/s/ Michael Pabian**
Michael Pabian

Dated: June 30, 2025

**CERTIFICATE OF SERVICE**

I, Michael Pabian, hereby certify that on this 30th day of June 2025, this Brief was served on the government via hand-delivery.

**/s/ Michael Pabian**
Michael Pabian

Dated: June 30, 2025